**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, et al.,

        Plaintiffs,

        v.                        Case No. 24-2445-DDC-ADM

GENESH, INC.,

        Defendant.

<u>**MEMORANDUM AND ORDER**</u>

This matter comes before the court on intervenor-plaintiff LZ's Motion to Strike. (ECF 145.) By way of this motion, LZ asserts that defendant Genesh, Inc. ("Genesh") obtained her school records via a subpoena issued in violation of Federal Rule of Civil Procedure 45(a)(4). She asks the court to strike all references to the school records from the transcripts of depositions that have occurred to date and to order all parties to refrain from referencing the records (and information contained therein) in future depositions/trial and to delete the records from their files. For the reasons explained further below, the court finds Genesh violated Rule 45(a)(4) and grants the motion.

**I.      BACKGROUND**

On September 30, 2024, the EEOC filed this action against Genesh, the owner and operator of more than 50 Burger King restaurant franchises, alleging Genesh violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 by, among other things, subjecting LZ (who was a minor at the time) and a class of female employees to sexual harassment. (ECF 1.) On November 11, 2024, LZ filed a complaint in intervention that asserted a number of claims,

1

including retaliatory discharge; negligent hiring, training, supervision, and retention; premises liability; assault; and intentional infliction of emotional distress. (ECF 17.)

In discovery, Genesh sought to obtain LZ's educational records from LZ's middle school and high school. On March 18, 2025, Genesh filed a notice of intent to issue a business records subpoena to non-party USD 342—L.Z.'s school district for her middle and high school years. (ECF 74.) The notice stated that the "subpoena will be issued without further notice to the parties unless an objection is received within fourteen (14) days from the date of service of this Notice." (*Id.* at 1). On March 31, 13 days after service of the notice, LZ's counsel addressed the subpoena notice in an email to Genesh's counsel. LZ's counsel stated:

> I am in receipt of your Notice of Intent to issue a Subpoena to USD 342 and am responding to set out my position. I don't believe that any school records prior to her employment with Genesh have any potential relevancy to this matter. I have reviewed a number of other employment cases and pretty uniformly Courts don't allow access to employment records prior to the employment subject of the litigation. I believe that similarly school records prior to are not relevant. In fact, I would suggest that school records dating back to middle school are far beyond the scope of discovery much more so than employment records (which courts do not allow discovery of).
>
> **<u>I intend to file an objection which would be due by tomorrow Tuesday) [sic] unless you can confirm you will wait to issue the Subpoena until we have an opportunity to meet and confer on this issue. Can you please advise of your position?</u>**

(ECF 145-1 (emphasis in original).)

On April 1, Genesh's counsel responded by email, asserting that the school records sought by the subpoena are relevant to LZ's claims and agreeing to meet and confer about the issue (along with other discovery issues). (ECF 145-2.) The parties discussed the subpoena during a phone conference on April 2. Later that day, LZ's counsel sent Genesh's counsel an email discussing case law "[i]n support of [counsel's] position that the terms of the subpoena are far too broad in

2

both temporal scope and the terms themselves." (ECF 145-3.) Genesh's counsel did not respond to the email.

But on April 9, Genesh served a revised version of the subpoena on USD 342. (ECF 145-4.) Genesh did not serve a copy of the revised subpoena on LZ nor otherwise indicate its intent to serve the subpoena as revised. The revised subpoena sought the same records as the first subpoena, but was more limited in temporal scope (although the cover letter accompanying it confusingly referenced both the original time period and the more-limited time period). (*Id*. at 1-2.) In response to the subpoena, USD 342 produced LZ's school records to Genesh on April 11 and 15.

Of note, the school records produced are protected by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. FERPA prohibits the disclosure of personally identifiable information from student records without written parental consent. However, FERPA permits a school to disclose records in response to a lawfully issued subpoena, provided that the school notifies the parent or guardian before such disclosure "so that the parent or eligible student may seek protective action." 34 CFR § 99.31(a)(9)(ii). Genesh notified USD 342 of this requirement in the cover letter accompanying the revised subpoena, but may have created confusion by stating, "Ms. Amy Creason, the mother of [LZ], was previously notified of the subpoena through their attorney, Kana Roller, and was provided an opportunity to object. As a result, the subpoena was limited to records dated after May 1, 2020." (ECF 145-4, at 1.) There is no suggestion in the record that, after USD 342 received that cover letter, it notified LZ's parents before giving Genesh the school records.

To LZ's counsel's surprise, during Creason's deposition on April 16, Genesh's counsel introduced LZ's school records as exhibits and questioned Creason about information contained therein. (ECF 146-1, 146-2.) Until then, LZ's counsel did not know that Genesh had served the

3

revised subpoena, nor that USD 342 had produced documents in response.  On April 17, Genesh finally provided LZ a copy of the revised subpoena served on USD 342.  On April 23, during the deposition of LZ, Genesh's counsel again introduced the school records as exhibits and questioned LZ about information therein.  (ECF 146-3.)  LZ's counsel did not object to this line of questioning during either deposition.

Later in the day on April 23, LZ's counsel emailed Genesh's counsel, stating: "Unless we can reach an agreement that all of the documents (as well as any copies) be destructed, striking all references from the record (depositions or otherwise), and prohibiting any reference or use of the information contained in the documents, I will ask the Court for a time to conduct a discovery conference regarding this matter."  (ECF 181-2.)  The parties continued to correspond about the dispute and conferred by telephone on May 8.  On May 13, at LZ's request, the court convened a discovery conference.  (ECF 127.)  During the conference, Genesh agreed to provide to LZ copies of the documents USD 342 produced in response to the subpoena.  (*Id.*)  The court granted LZ leave to file the present motion.  (*Id.*)

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 45(a)(4) requires that when a subpoena "commands the production of documents, electronically stored information, or tangible things . . . then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."[1]  The purpose of the rule is to "enable[e] the other parties to object."  FED. R. CIV. P. 45(a) advisory committee's note to 2013 amendment.  *See also Gilpatrick v. Harper Co., Kansas,* No. 18-1245-JWB-KGG, 2018 WL 6504394, at *3 (D. Kan. Dec. 11, 2018) ("The

---

[1] The notice requirement was previously set out in Rule 45(b)(1), but was moved to subsection (a)(4) as part of the 2013 Rules Amendments.

requirement that notice be provided to the parties before service of the subpoena allows opposing counsel time to object to the subpoena." (quoting *Butler v. Biocore Medical Technologies, Inc.*, 348 F.3d 1163 (10th Cir. 2003)). "When a party fails to receive prior notice of the information sought from a non-party, a party is deprived of its greatest safeguard under the Rule, that is, the ability to object to the release of the information prior to disclosure." *Welch v. Centex Home Equity Co., LLC*, No. 03-2132-JWL-DJW, 2004 WL 2331921, at *1 (D. Kan. Apr. 12, 2004). *See also Lobato v. Ford*, No. CV.A. 05-CV-01437LTB, 2007 WL 3342598, at *3 (D. Colo. Nov. 9, 2007) ("By failing to receive prior notice of the information sought by the non-party, a party is deprived of its greatest safeguard under the Rule, i.e., the ability to object to the release of the information prior to its disclosure." (quoting *Spencer v. Steinman*, 179 F.R.D. 484, 489 (E.D. Pa.1998)). "In addition, when an attorney misuses his or her power under Rule 45 to command a non-litigant to produce documents in a lawsuit to which he or she is a stranger by failing to give appropriate notice to the parties, public confidence in the integrity of court processes is eroded." *Welch,* 2004 WL 2331921, at *1.

When a party violates Rule 45's notice requirement, courts take varying positions on the relief to be afforded the adverse party. The Tenth Circuit does not appear to have addressed the issue. However, the majority of courts that have considered the issue have found that when a party fails to give timely notice and the opposing party is prejudiced by the deprivation of the right to object, it is appropriate to quash the subpoena and prohibit the use of any produced documents. *See, e.g., Martinez v. Target Corp.,* 278 F.R.D. 452, 453 (D. Minn. 2011) (quashing subpoena and finding adverse party need not show evidence of prejudice because "the prejudice to [the adverse party] is anticipated by the existence of Rule 45(b)(1)"); *Gilpatrick*, 2018 WL 6504394, at *4 (prohibiting production of documents); *Fla. Media, Inc. v. World Publications, LLC*, 236

F.R.D. 693, 695 (M.D. Fla. 2006) (quashing subpoenas and ordering return of produced documents to non-party respondent). *Cf. Walker v. Bd. of Cnty. Comm'rs.,* No. 09-1316-MLB, 2011 WL 2118636, at *6 (D. Kan. May 27, 2011) ("This court declines to impose sanctions or a protective order when a party fails to timely assert objections after receiving notice of intent to issue subpoenas."). This is particularly true when the subpoenaed non-party produces documents in response to a subpoena before the opposing party has an opportunity to lodge its substantive objections to the subpoena. *See, e.g., In re Martinez,* 736 F. Supp. 3d 1189, 1205 (S.D. Fla. 2024) (quashing subpoenas for a violation of the notice requirement where the adverse party, upon receiving late notice, raised substantive objections to the documents sought); *United States v. Santiago-Lugo*, 904 F. Supp. 43, 48 (D.P.R. 1995) (finding subpoenas for confidential information issued without prior notice "null and void" and requiring documents produced to be "deposited immediately with the court for return to its legitimate owner"); *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.,* 196 F.R.D. 220, 222 (W.D.N.Y. 2000) (quashing subpoenas issued without prior notice, ordering that documents produced in response to the subpoenas be turned over to opposing party, and sanctioning requesting attorney for violation of Rule 45). *See also, Blaser v. Mt. Carmel Reg'l Med. Ctr., Inc.,* No. 06-2422-JWL, 2007 WL 852641, at *2 (D. Kan. Mar. 21, 2007) (noting that "when notice has been given after a subpoena is served but before the response period has expired, courts generally look to whether opposing counsel has had sufficient time to object" when determining prejudice). *Cf. Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 667 (D. Kan. 1998) ("When opposing counsel have notice and sufficient time to object [before the production date], they are not prejudiced by the violation."). *But see Welch*, 2004 WL 2331921, at *2 (declining to prohibit the use of subpoenaed documents at trial, but without prejudice to non-noticed party's ability to file a pretrial motion in limine to exclude the documents); *Lobato v. Ford*,

No. 05-CV-01437LTB, 2007 WL 3342598, at *5 (D. Colo. Nov. 9, 2007) (declining to bar use of documents produced in response to subpoena, but without prejudice to the filing of a motion in limine); *JB ex rel. Palmer v. Asarco Inc.*, 2005 WL 8174815, at *3 (N.D. Okla. Jan. 10, 2005) (declining to prohibit use of data obtained from non-noticed subpoena where adverse party presented no evidence of harm). Given the facts in this particular case—including the protected status of the subpoenaed documents, LZ's substantive objections to production of the documents, and Genesh's service of the subpoena without notice to LZ's counsel—the court is persuaded to follow the body of case law that quashes the unnoticed subpoena and prohibits use of the illicitly obtained documents.

## III.    ANALYSIS

### A.  Violation of Rule 45(a)(4) and Prejudice to LZ

The court has no trouble finding Genesh violated Rule 45(a)(4). The clear and unequivocal language of the rule required Genesh to serve LZ (and other parties in the case) notice and a copy of the subpoena that it intended to serve on USD 342 *before* service on USD 342. Genesh does not deny that it did not give LZ notice or a copy of the version of the subpoena it ultimately served on USD 342 until *after* USD 342 produced the school records in response and Genesh surprised its opponents with the records during depositions.

Genesh attempts to skirt this violation by relying on its notice of the first version of the subpoena, which it served LZ on March 18. But even if the court accepts this position, the court still would find Genesh violated Rule 45. Genesh's notice accompanying that subpoena stated that Genesh would issue the subpoena "*unless* an objection is received within fourteen (14) days from the date of service of this Notice." (ECF 74, at 1 (emphasis added).) Within the 14-day period, LZ sent an email to Genesh asserting substantive objections to the subpoena's relevance and temporal

7

scope.  (ECF 145-1.)  The parties then met and conferred in an attempt to resolve the objections, and Genesh agreed to limit the temporal scope of the subpoena in an April 2 telephone call.  (*See* ECF 174-1.)  Genesh appears to be arguing that this concession resolved all of LZ's objections (although its response brief is a bit hazy in this regard), such that it was proper for Genesh to serve the revised version of the subpoena on USD 342 without further notice to LZ.  But this assertion is belied by LZ's email to Genesh just hours after the call, citing additional case law "[i]n support of [counsel's] position that the terms of the subpoena are far too broad in both temporal scope and the terms themselves."  (ECF 145-3.)  This email clearly indicated that LZ continued to object to the issuance of the subpoena, even with Genesh's limit to temporal scope.  So apparently Genesh decided that, rather than responding to LZ's email, or continuing the discussion, or serving LZ with a notice alerting LZ that Genesh planned to serve the revised subpoena, it would unilaterally serve the subpoena.  (ECF 145-4.)  This action violated both Rule 45 and the spirit of the meet-and-confer discovery process.

Genesh's clandestine service of the revised subpoena prejudiced LZ in multiple ways.  First, it deprived LZ of her right to file a formal objection to the school district responding to the subpoena.  She had no opportunity to seek relief from the court, such as filing a motion to bar or limit the discovery before the documents were produced.  Genesh suggests that any such motion would have failed on its merits because LZ's request for emotional-distress damages make her school records relevant.  But Genesh's argument is a red herring.  The issue is not whether an objection ultimately would have been successful, but whether LZ was deprived of the right to even make the objection and advocate her position.

Second, Genesh's unknown service deprived LZ and her parents the opportunity to inform USD 342 that they opposed the release of the school records.  Had USD 342 been aware of their

opposition, it is questionable whether USD 342 would have moved so quickly to respond to the subpoena. As noted above, FERPA requires schools to notify parents before disclosing student records in response to a subpoena "so that the parent or eligible student may seek protective action." 34 CFR § 99.31(a)(9)(ii). USD 342 violated this requirement, perhaps in part because Genesh's letter accompanying the subpoena stated that Creason already had been "notified of the subpoena" and "provided an opportunity to object." (ECF 145-4, at 1.) This half-truth was misleading in that it failed to notify USD 342 that LZ had lodged objections to the school district producing the documents. Had Genesh timely notified LZ of the service of the subpoena, LZ would have known that she needed to make USD 342 aware of her position.

Third, it resulted in the release of records over which LZ had a FERPA-protected privacy interest. Those private records are now the subject of a public dispute in this court and, as such, are part of the public record.[2] Although the school records contain no scandalous information, LZ has

_____

[2] The court **denies** LZ's motion to seal the school documents, attached as Exhibits D, F, and G to her motion to strike. (ECF 172.) "Courts have long recognized a common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007); *see also McWilliams v. Dinapoli*, 40 F.4th 1118, 1130–31 (10th Cir. 2022) ("There is a longstanding common-law right of public access to judicial records."). This "fundamental" right preserves the integrity of the judicial processes "by allowing the public to see how courts make their decisions." *McWilliams,* 40 F.4th at 1130 (quoting *United States v. Bacon*, 950 F.3d 1286, 1297 (10th Cir. 2020)). As a result, "there is a strong presumption in favor of public access" to documents filed on the court's docket. *United States v. Cushing*, 10 F.4th 1055, 1082 (10th Cir. 2021). To overcome this presumption, a party seeking to file documents under seal "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform the court's decision-making process." *Williams v. FedEx Corp. Servs*., 849 F.3d 889, 905 (10th Cir. 2017) (alteration and quotation omitted). "This burden is 'heavy,'" *McWilliams*, 40 F.4th at 1130-31 (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)), and must be supported by specific, rather than general, information. *See Bacon*, 950 F.3d at 1294. The court has discretion to seal documents if it concludes that "countervailing interests heavily outweigh the public interests in access to the judicial record." *Id.* at 1293.

LZ has not specifically addressed these legal standards or her burden to seal the records from the public. After examining the Exhibits, the court finds that they are relevant to the issues at play in the motion and contain no scandalous information that might be particularly harmful to

nonetheless lost her right to keep them private as a result of having to bring this motion for relief from Genesh's behavior.

### B. LZ Did Not "Sandbag" or Waive Her Right to Object to Use of Subpoenaed Documents

Genesh attempts to evade the consequences of its Rule violation by arguing that LZ's motion is improper—either because her counsel failed to object at Creason and LZ's depositions when Genesh introduced and used the records, or because LZ strategically delayed bringing the motion. The court disagrees. To the extent there have been procedural violations in this action, the blame falls on Genesh.

During Creason's April 16 deposition, Genesh's counsel introduced LZ's school records as exhibits and questioned Creason about information contained therein. (ECF 146-1, 146-2.) Until this point, LZ did not know that Genesh had actually proceeded with serving a subpoena on USD 342. In addition to Genesh not giving LZ notice that it served the subpoena, Genesh also did not provide LZ with a copy of the produced documents in advance of the deposition. In fact, Genesh did not provide all the documents USD 342 produced until after the court addressed this issue during a May 13 discovery conference.[3]

LZ did not delay in objecting to Genesh's Rule 45 notice violation. LZ immediately began the required meet-and-confer process upon learning of the violation. On April 23, LZ's counsel

---

LZ if made public. Because LZ has not met her heavy burden of demonstrating an interest that outweighs the public's presumptive right of access to judicial records, the motion for leave to file under seal is denied. LZ, as the party who provisionally filed the Exhibits under seal (ECF 146), is responsible for making the appropriate filings in the public record. D. Kan. Rule 5.4.2(d). Because LZ is currently proceeding in this case under a pseudonym, the court grants her leave to redact her name from the publicly filed versions of the school records.

[3] This is not Genesh's first highly irregular procedural misstep. Genesh also previously filed a purportedly "joint motion" without obtaining LZ's consent. (*See* ECF 127.)

10

emailed Genesh's counsel, stating: "Unless we can reach an agreement that all of the documents (as well as any copies) be destructed, striking all references from the record (depositions or otherwise), and prohibiting any reference or use of the information contained in the documents, I will ask the Court for a time to conduct a discovery conference regarding this matter." (ECF 181-2.)  The parties continued to correspond about the dispute and conferred by telephone on May 8.  On May 13, at LZ's request, the court convened a discovery conference, at which it set deadlines and parameters for the present motion.  (ECF 127.)  LZ has adhered to those deadlines and parameters.

To the extent Genesh complains that LZ's counsel should have lodged objections when Genesh's counsel introduced the school records during Creason and LZ's depositions, such argument has no relevance to the questions presented in this motion, i.e., whether Genesh violated Rule 45's notice requirement and what relief is appropriate for such a violation.  Moreover, Genesh did not make this argument to the court during the May 13 discovery conference.  And, in any event, even if the question of whether LZ waived a deposition objection were before the court, Genesh has cited no authority to support its position that an objection to using documents that have been inappropriately obtained is an "objection to an error or irregularity" that must be asserted during a deposition.  Federal Rule of Civil Procedure 32(d)(3)(B) ("An objection to an error or irregularity at an oral examination is waived if: (i) it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time.").

### C.  Relief Ordered

The court has concluded that Genesh violated the notice requirement of Rule 45(a)(4).  Genesh issued a subpoena to LZ's school district, requesting her school records, knowing that LZ

objected to Genesh obtaining those records. LZ has been prejudiced by Genesh's actions. Accordingly, the court finds the subpoena must be quashed and its forbidden fruits deemed unusable. *See Fla. Media, Inc.*, 236 F.R.D. at 695; *Santiago-Lugo*, 904 F. Supp. at 48; *Murphy,* 196 F.R.D. at 222. The court orders the parties to destroy documents in their possession produced as a result of the non-compliant subpoena. The court strikes all references to those documents from the deposition records and prohibits the parties from referencing the documents or their contents in future depositions or trial testimony in this case. The court further orders Genesh to provide notice of all subpoenas for production of documents that it intends to issue to any non-party seven days before the issuance.

**IT IS THEREFORE ORDERED** that LZ's Motion to Strike (ECF 145) is granted. The court quashes Genesh's subpoena to USD 342 and orders the remedies set forth in Section III(C) above.

**IT IS FURTHER ORDERED** that LZ's Motion to Seal Exhibits D, F, and G to LZ's Motion to Strike (ECF 172) is denied.

Dated June 30, 2025, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge