IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GENESH, INC., <br><br> Defendant. | **Copy of ECF 320 redacted for public filing** <br><br> Case No. 24-2445-DDC-ADM |

**MEMORANDUM AND ORDER**

In this action, the Equal Employment Opportunity Commission ("EEOC") alleges that Genesh, Inc. ("Genesh"), the owner and operator of more than 50 Burger King restaurant franchises, violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 by, among other things, subjecting a class of female employees to sexual harassment. (ECF 1.) This matter is now before the court on Genesh's Motion to Compel the Production of Documents Responsive to Genesh's Fourth Request for Production of Documents. (ECF 279.) By way of the motion, Genesh seeks an order compelling the EEOC to produce (1) medical and therapy records for each claimant on whose behalf it seeks relief, and (2) for intervenor-plaintiff LZ, mobile phone content that references an individual with whom LZ is alleged to have had a sexual relationship. For the reasons explained further below, the court grants the motion to compel as modified by the court to include temporal limits.

**I.    BACKGROUND**

On September 30, 2024, the EEOC brought this public-enforcement action against Genesh based on alleged sexual harassment of employees at particular Burger King restaurants. (ECF 1.)

1

To date, three former employees have intervened as plaintiffs in the action, including LZ (as particularly relevant to issues raised in the current motion). When Genesh hired LZ in May 2022 to work at a Burger King restaurant managed by Stephen Wampler, LZ was 15 years old. LZ alleges that Wampler sexually molested and statutorily raped her multiple times between May and October 2022. (ECF 17, at 5.) The EEOC's complaint seeks pecuniary and non-pecuniary losses, including emotional distress damages, for the employee class. (ECF 1, at 7.) LZ's complaint similarly seeks "pecuniary and non-pecuniary damages, including . . . emotional distress . . . anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience." (ECF 17, at 6.)

Genesh served requests for production seeking documents that it asserts are relevant to claimants' emotional distress claims. At issue in the present motion are three document requests in Genesh's Fourth Request for the Production of Documents: Requests No. 2, 6, and 7. (ECF 279-1.)

Request No. 2 seeks: "Documents Relating To or supporting the alleged emotional distress or other non-economic harm . . . including but not limited to medical records, therapy or counseling records, affidavits, declarations, witness statements, and notes of interviews." (*Id.* at 4.) The EEOC objected to providing information predating any claimant's Genesh employment and responded that, as to therapy sought as a result of such employment, no records existed except as to LZ. (*Id.*) The EEOC has withheld responsive documents on the ground that only "garden variety" emotional distress is alleged.

Request No. 6 seeks: "Documents referring or Relating To any medical treatment, psychological therapy, counseling, or medication that was sought, recommended, or received . . . for symptoms of emotional distress, mental anguish, anxiety, depression, or any similar emotional

2

or psychological condition." (*Id.* at 6.) The EEOC again objected to providing information that predates any claimant's Genesh employment, but, as to information about medical providers a claimant saw as a result of employment with Genesh, the EEOC referred to its response to Request No. 2. (*Id.*) The EEOC produced post-employment therapy records for LZ and one other claimant.

Finally, Request No. 7 seeks: "Documents, text messages, social media messages, emails, multimedia content (including photos and videos), call logs, voicemails, and any other communications retrieved from or stored on LZ's mobile phone . . . that: (a) reference, mention, or relate to any individual named ▓▓▓▓; (b) reflect or document communications between LZ and any individual named ▓▓▓▓; or (c) describe, imply, or suggest the nature of her relationship with such person, including any romantic, sexual, or personal involvement." (*Id.* at 6-7.) The EEOC objected to the request as irrelevant and not proportional to the needs of the case in that answering would require searching the entirety of LZ's photo library. (*Id.* at 7.)

## II.   LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). When a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel. FED. R. CIV. P. 37(a). In response to a motion to compel, the responding party has an opportunity to re-assert and offer support for objections made in the discovery responses themselves. Any objection the responding party does not re-assert in its response to a motion to compel is deemed abandoned. *See Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013). "A district court has substantial discretion in handling discovery requests under Rule 26(b)." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1164 (10th Cir. 2010).

### III. ANALYSIS

As discussed above, Genesh moves to compel the EEOC's responses to Requests No. 2, 6, and 7.

**A. Requests No. 2 and 6: Medical and Psychological Treatment Records**

Requests No. 2 and 6, set forth above, are similar. In Request No. 2, Genesh seeks any document that might support or undermine a claimant's claim of emotional distress. In Request No. 6, Genesh seeks medical or psychological treatment records, whether or not the treatment was related to the alleged harassment. The parties address the two requests together, so the court will do the same. The EEOC re-asserts several objections to producing claimants' medical and mental health records.

<u>Psychotherapist-Patient Privilege</u>

First, the EEOC asserts the psychotherapist-patient privilege over the mental-health records of Tauna Frederick, Veronica Garcia, Emely Alvarado-Arenas, and Jane Doe 1.[1] The Supreme Court recognized the psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996), ruling that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected." Like other privileges, however, "the patient may of course waive the protection." *Id.* at 15 n.14. The Tenth Circuit has determined that "a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue." *Fisher v. Sw. Bell Tel. Co.*, 361 F. App'x 974, 978 (10th Cir. 2010) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)).

---

[1] The EEOC does not assert privilege over the mental-health records of LZ, Karla Lassen, or Christy Rodriguez, all of whom allege that they sought treatment related to the emotional distress arising from their employment at Genesh. (ECF 287, at 2.)

Genesh argues the EEOC has placed claimants' mental-health records "at issue" by seeking "damages for serious emotional or psychological harm." (ECF 279, at 7.) The EEOC responds that, unlike plaintiffs or claimants who seek emotional-distress damages specifically related to their employment, Frederick, Garcia, Alvarado-Arenas, and Doe 1 seek damages only related to "garden variety" emotional distress. (ECF 287, at 3.) Based on this distinction, the EEOC suggests these four claimants did not waive the psychotherapist-patient privilege by placing their condition at issue in the case.

The Tenth Circuit has not directly defined the contours of when a plaintiff places her protected psychotherapist communications "at issue." This void has led lower courts to take varying approaches in determining whether a plaintiff has placed protected information at issue in asserting an emotional-distress claim.

> Courts employing the "narrow" approach will only find a waiver of the psychotherapist privilege where the emotional distress claims are "severe," where the plaintiff relies on communications with a therapist, or where the plaintiff intends to offer expert testimony on the claim of emotional distress. Under the "broad approach," courts find a waiver when a plaintiff places his or her mental condition at issue by making a claim for emotional distress damages.

*Alsaadi v. Saulsbury Indus., Inc.*, No. 2:23-cv-291, 2024 WL 584631, at *4 (D.N.M. Feb. 13, 2024) (internal modifications and citations omitted). "[T]he 'garden variety' concept represents a compromise between the 'narrow approach' and the 'broad approach.'" *Id.*

The court has reviewed the case law and agrees with a number of cases out of the District of New Mexico holding that the Tenth Circuit seems to have taken the "broad approach" to waiver and would not adopt the "garden variety"/"middle ground" approach if presented with the issue. As a starting point, the court notes that the Tenth Circuit in *Fisher* held that plaintiff's "request for emotional-distress damages placed her psychological state in issue and entitled [defendant] to

5

discover her therapy records." 361 F. App'x at 978. *See also Johnson v. Rogers*, No. 1:16-cv-02705-JMS-MPB, 2018 WL 10246993, at *3 (S.D. Ind. Apr. 20, 2018) (citing *Fisher* for the "minority" view finding "waiver whenever emotional distress damages of any kind are sought"). Although *Fisher* is an unpublished decision, the court still looks to it as persuasive authority. Next, considering lower court cases, the court finds the reasoning discussed in *Wright v. Matinez*, No. 2:18-cv-01126-WJ-KRS, 2019 WL 4932849, at *3 (D.N.M. Oct. 7, 2019), particularly convincing. There, the court noted that "[a]lthough meant to be a workable solution, the garden-variety approach to emotional injury is doctrinally complex." *Id.* This is because courts have defined garden-variety emotional distress "in a variety of ways." *Castillo v. Villa*, Civ. No. 15-344 SCY/KK, 2016 WL 10592207, at *6 (D.N.M. Jan. 22, 2016) (cited in *Wright*, 2019 WL 4932849, at *3). Based on the difficulty of defining "garden variety," the *Wright* court was "not convinced the Tenth Circuit would adopt this middle-ground approach." *Wright*, 2019 WL 4932849, at *3. *See also Empey v. FedEx Ground Package Sys., Inc.*, Civ. No. 15-0815 KK/KBM, 2016 WL 10179244, at *3 (D.N.M. July 7, 2016) (explaining that "[f]or one thing, 'garden variety' emotional distress has proven difficult to define" and noting the "problem with these cases is definitional and stems from the imprecision and elasticity of the phrase 'garden variety'" (quoting *Flowers v. C.O. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011)). The court agrees with the reasoning in these cases and declines to find that the EEOC's assertion that claimants are merely seeking "garden variety" emotional distress prevents waiver of the psychotherapist-patient privilege. The EEOC's privilege objection is overruled.

<u>Relevance</u>

Second, the EEOC objects that the mental-health records of Frederick, Garcia, Alvarado-Arenas, and Doe 1 are not relevant to the issues in this case. Genesh responds that the treatment

6

records sought in Requests No. 2 and 6 are relevant to the scope of plaintiffs' damages because they bear on (1) whether each claimant's emotional distress stems from the alleged harassment at Genesh or, instead, a preexisting condition or alternate cause, and (2) the severity of any alleged harm.

When a party seeks emotional-distress damages in an employment action, no bright-line rule exists regarding whether the party must produce mental-health records. *See Imel v. Forte Prods.*, No. 19-4107-JWB-ADM, 2020 WL 3545627, at *4 (D. Kan. June 30, 2020); *Sweeney v. Ivanti, Inc.*, No. 21-cv-2540-JAR-TJJ, 2022 WL 3444784, at *7 (D. Kan. Aug. 17, 2022). Rather, the court must consider the facts of the particular case to determine whether "the requested discovery appears relevant to the claims or defenses *in this case*." *Imel,* 2020 WL 3545627, at *4 (emphasis in original); *Sweeney,* 2022 WL 3444784, at *7 ("[T]he Court, evaluating the specific facts, allegations, and claims in the case before it, decides whether the particular medical records sought by the discovery request should be discoverable under the standards set forth in Fed. R. Civ. P. 26(b)(1)."). The party seeking discovery bears the initial burden to establish its relevance. *See Sperry v. Corizon Health, Inc.*, No. 18-3119-EFM-ADM, 2020 WL 5642343, at *2 (D. Kan. Sept. 22, 2020); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003). At the discovery stage, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) ("[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case will be deemed relevant."); *Waters v. Union Pacific R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly

7

construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." (internal quotations and citation omitted)). "Relevance is often apparent on the face of the request." *Imel*, 2020 WL 3545627, at *3 (citing *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006)). And when that is the case, or when the discovering party has met the low bar of establishing relevance, then the burden shifts to the party resisting discovery to support its objections. *Id.* (citing *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014)).

Under the liberal relevance standards applicable at this stage in the proceeding, the court finds the treatment records sought in Requests No. 2 and 6 relevant on their face to the scope of claimants' damages. And the EEOC has not met its burden of demonstrating the records of Frederick, Garcia, Alvarado-Arenas, and Doe 1 are *not* relevant. The EEOC argues that the records are not relevant because it will only seek emotional distress damages for these individuals based on their testimony "of how the harassment affected them, without any relationship or reference to past experiences or mental health issues." (ECF 287, at 5.) But the court agrees with Genesh that the records nonetheless could bear on (1) whether each claimant's alleged emotional distress stems from the alleged harassment at Genesh or, instead, a preexisting condition or alternate cause, and (2) the severity of any alleged harm. *See Imel*, 2020 WL 3545627, at *5 (holding ex-employee's mental health records were "relevant to both causation and the extent of his emotional distress" where he sought "garden variety" emotional-distress damages)); *Owens,* 221 F.R.D. at 659-60 (holding treatment and counseling records were relevant to claims for "garden variety" emotional damages under Title VII because they "may reveal stressors unrelated to Defendant that may have affected Plaintiff's emotional well being"). *But see Ramsey v. Snorkel Int'l, Inc.,* No. 2:23-cv-

8

2468-EFM-TJJ, 2024 WL 1834365, at *5 (D. Kan. Apr. 26, 2024) (finding medical records not relevant where plaintiff represented that he would only use his own testimony to support his emotional distress claim and would not present expert or treating physician testimony). The EEOC's relevance objections are overruled.

<u>Vague, Ambiguous, and Overly Broad</u>

Third, the EEOC objects that Requests No. 2 and 6 are "vague, ambiguous, and overly broad." (ECF 287, at 3.) The EEOC takes specific issue with the requests' use of the phrase "relating to," asserting that this could "require every text message confirmation and calendar notation 'relating to' therapy appointments." (*Id.*) The EEOC further notes that the requests have no temporal limit, making them overly broad.

Once relevance has been established, the party resisting discovery bears the burden to support its other objections. *See Ehrlich*, 302 F.R.D. at 624 (ruling the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-cv-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id*. at 670-71.

9

Here, the EEOC's attempt to meet its burden of demonstrating that Requests No. 2 and 6 are "vague and ambiguous" consists of giving a single example. The EEOC states, "[A]s worded, Request 6 would require production of every text message confirmation and calendar notation 'relating to' therapy appointments." (ECF 287, at 3.) Genesh states, however, that Request No. 6 only seeks "medical and psychological treatment records." (ECF 279 at 6.) With this clarification, the court overrules the EEOC's "vague and ambiguous" objection.

The court is more sympathetic to the EEOC's objection that Requests No. 2 and 6 are overly broad because they include no temporal limit. "[E]mployment discrimination cases have held that discovery of information both before and after the liability period may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period." *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, at *2 (D. Kan. Jan. 31, 2002) (citing cases). The court therefore exercises its discretion to modify the requests to include a temporal limit. The court finds that limiting the scope of these requests to a period of *three years prior to each claimant's employment with Genesh to the present* is a reasonable limit. *See id.* (limiting discovery request for medical and psychological information to three years prior to the time of alleged discriminatory conduct); *Wright*, 2019 WL 4932849, at *3 (limiting request for psychological treatment records to five years); *Alsaadi*, 2024 WL 584631, at *4 (limiting request to records of mental health treatment "sought or received from the two years prior to the start of her employment to the present"). The court sustains the EEOC's overbreadth objection to Requests No. 2 and 6 but compels the EEOC to answer the requests as herein limited.

B.      Request No. 7: Documents and Content on LZ's Mobile Phone Referencing ▮▮▮▮▮

In Request No. 7, Genesh seeks data and communications from LZ's mobile phone (including text messages, social media message, emails, photos, and voicemails) that reference an individual identified as "Michael." The EEOC re-asserts several objections to Request No. 7, and LZ has submitted a separate brief adding to the EEOC's arguments.

Relevance

The EEOC and LZ first assert that information on LZ's mobile phone about ▮▮▮▮▮ has no relevance to the workplace sexual-harassment claims and defenses in this case. As discussed above, Genesh, as the party seeking discovery via Request No. 7, bears the initial burden to establish its relevance. *Sperry,* 2020 WL 5642343, at *2. Genesh may meet this low burden by demonstrating that the request could encompass information that could bear on an issue in this case. *See Oppenheimer Fund*, 437 U.S. at 351; *Rowan,* 2016 WL 3745680, at *2. Thereafter, the burden shifts to the EEOC and LZ to support their relevance objections. *Imel*, 2020 WL 3545627, at *3.

To demonstrate relevance, Genesh has submitted copies of text messages sent by LZ that reveal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (shortly after she began employment at Burger King, but before any sexual contact with Wampler). (ECF 281 at 3, 11-12.) Genesh asserts that any such relationship ▮▮▮▮▮ is inconsistent with information that LZ provided in a March 2025 psychiatric interview with her retained expert psychologist, Stephen E. Peterson, M.D., the purpose of which was "to address [the] presence or absence of emotional damages caused by" claims in this action—specifically, "the sexual grooming and an extensive secret sexual relationship with [Wampler]." (ECF 280, at 2.) As documented in Dr. Peterson's

11

expert report, LZ informed him that, "[b]efore meeting Stephen Wampler, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (ECF 280 at 10.) Dr. Peterson concluded that at the time of the sexual abuse by Wampler, LZ "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (ECF 280, at 13.) Genesh's rebuttal expert, Sanya Virani, M.D., opines in her report that the text messages about ▮▮▮▮ "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ predates the alleged workplace victimization by over a month," and "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ individual portrayed in Dr. Peterson's assessment." (ECF 282, at 7.) Dr. Virani concludes that the text messages showing LZ's "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, demonstrate[] unreliability of self-reported information that formed the basis of Dr. Peterson's assessment." (ECF 282, at 14.) She further opines that, based in part on "inadequate investigation of contradictory evidence," Dr. Peterson's evaluation fails to meet "legal requirements for expert testimony." (ECF 282, at 14.) Genesh asserts that additional information on LZ's mobile phone about ▮▮▮▮ could bear on the credibility of Dr. Peterson's diagnosis and damages opinion by providing a more complete picture of LZ's ▮▮▮▮▮▮▮▮▮▮. And further, that this information could allow Genesh to "test whether Dr. Peterson's opinions rest on a reliable foundation" and "probe the accuracy of the very assumptions that underpin the EEOC's expert testimony." (ECF 279, at 9.)

The court finds that Genesh has met its burden of demonstrating the relevance of Request No. 7 given the dependence on LZ's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—discussed her own expert reports in this case. With the burden then shifted, the EEOC and LZ have not demonstrated that information about ▮▮▮▮ is *not* relevant. Through the EEOC and LZ's complaints seeking damages for LZ's emotional distress, the EEOC and LZ have put at issue the causes and extent of those damages. Through Dr. Peterson's report, they have alleged that those damages were caused

by the sexual abuse LZ suffered because of her employment with Genesh and that those damages are significant. Thus, information that could call into question Dr. Peterson's conclusions, and the basis for those conclusions, bears on the claims in this action. LZ argues that information about ███████████████████████████ is not relevant because it was not necessary for Dr. Peterson or LZ's treating mental health providers to form their opinions. (ECF 286, at 4.) But whether or not the information should bear weight on expert opinions is exactly what makes it relevant. After all, Genesh's expert says that Dr. Peterson is *wrong* in not wishing to consider the full picture, thereby making his opinion less than credible. LZ and the EEOC assert that Genesh's expert's opinion is also flawed and not based on all relevant information, but this is a non sequitur. The question is whether information about LZ's relationship with ██████ bears on an issue in this case, and it unquestionably does bear on the cause and extent of LZ's alleged emotional-distress damages.[2]

The EEOC and LZ also suggest that Federal Rule of Evidence 412 should lead the court to bar discovery about ██████. Rule 412 probits the admission of evidence of a victim's "other sexual behavior" or "sexual predisposition" in proceedings involving alleged sexual misconduct. Rule 412 governs admissibility, not discoverability. *See* FED. R. EVID. 412 advisory committee's notes to 1994 amendments (directing "discovery of a victim's past sexual conduct or predisposition in civil cases . . . will continue to be governed by Fed. R. Civ. P. 26"). Nonetheless, "the Court must consider it 'in order not to undermine [its] rationale.'" *Hertenstein v. Kimberly Home Health Care, Inc.,* 189 F.R.D. 620, 627 (D. Kan. 1999) (quoting *Burger v. Litton Indus.,* 91 Civ.

---

[2] The court is less convinced by Genesh's alternate argument that documents sought by Request No. 7 are relevant "to an assessment of L.Z.'s credibility." (ECF 279, at 6.) The record does not indicate whether Dr. Peterson asked LZ a question in which she would have been required to have mentioned ██████ in a truthful answer.

13

0918(WK)(AJP), 1995 WL 476712, at *2 (S.D.N.Y. Aug. 10, 1995) and FED. R. EVID. 412 advisory committee's notes to 1994 amendments). The Advisory Committee's Notes provide that "Courts should presumptively issue protective orders barring discovery *unless* the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." FED. R. EVID. 412 advisory committee's notes to 1994 amendments (emphasis added).

As the court found above, discovery related to ▮▮▮▮ is relevant to the facts and theories in this case. LZ's argument that, in considering Rule 412, the discovery is not relevant "[b]ecause L.Z. has not placed her relationships with third parties at issue in this case" (ECF 286, at 7) rests on a faulty premise. As explained, LZ *has* placed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at issue through the expert report of Dr. Peterson who considered LZ's ▮▮▮▮ in reaching his conclusions of emotional distress. *See Hertenstein,* 189 F.R.D at 628-29 (permitting examiner to inquire about private sexual activities in sexual-harassment case and concluding that such inquiry did not run afoul of Rule 412 because it bore on the cause and extent of claimed psychological injuries); *Greenhorn v. Marriott Int'l, Inc.,* 216 F.R.D. 649, 654 (D. Kan. 2003) (permitting examiner to inquire about non-work-related sexual matters where plaintiff in sexual-harassment case asserted defendant's conduct "caused her mental state and several specific injuries" and finding the inquiry necessary to "validly assess her mental state and her injuries"); *Hobbs v. Bd. of Cnty. Commissioners of Grant Cnty.*, No. CV 05-237 MCA/RLP, 2005 WL 8163567, at *4 (D.N.M. Aug. 16, 2005) (considering Rule 412 and finding discovery of past sexual relationship relevant to the cause of sexual-harassment plaintiff's alleged emotional-distress damages). Notably, Genesh is not pursuing a fishing expedition for any and all of ▮▮▮▮ (LZ's contrary argument is unavailing) but instead has limited its request to information about a

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ during her employment with Genesh and around the time of her supervisor's sexual abuse. Moreover, LZ has not identified a specific harm that could befall her if the court compels a response to Request No. 7. Any potential harm would presumably be minimalized by the facts that LZ's identity is not public and the discovery could be designated as "confidential" under the protective order. *See Christal L. v. New Mexico Child., Youth & Fams. Dep't*, No. CV 04-574 RB/RLP, 2005 WL 8163964, at *2 (D.N.M. May 9, 2005) (allowing discovery of minor plaintiff's sexual past but requiring it be governed by a confidentiality order). The court therefore overrules the EEOC's relevance objection.

Proportionality

The EEOC and LZ next assert that Request No. 7 is not proportional to the needs of the case because a "search of years of data on L.Z.'s phone of all media types would have to be conducted and individually analyzed to ascertain if that hit was responsive to this request for the subject Michael." (ECF 286, at 4.) But neither the EEOC nor LZ address, other than in conclusory terms, the burden or resource expenditure that could accompany such a search and analysis. Thus, the court has no ability to weight such a search in performing a proportionality analysis.

Next, the EEOC and LZ argue that Genesh has already conducted, and has had additional opportunities to conduct, discovery into LZ's claims and personal relationships. LZ suggests that Genesh could have asked LZ about her personal relationships during LZ's deposition, but LZ does not state whether and how Genesh would have known of the existence of ▓▓▓▓ prior to the deposition. LZ suggests that Genesh could have asked LZ's parents and mental-health providers about LZ's relationship with ▓▓▓▓, but this ignores the undisputed facts suggesting that LZ did not inform her parents, nor at least one psychiatrist, about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. LZ also asserts that the EEOC has already provided Genesh with "a substantial amount of data contained"

15

on LZ's mobile phone. (ECF 286, at 5.) But again, this conclusory statement does not define "substantial" or in any way place in context the information that was previously provided as compared to the information Request No. 7 seeks. The proportionality objection is overruled.

Breadth

Finally, the EEOC and LZ assert that Request No. 7 is overly broad on its face because it is not limited in time or subject matter. But it is disingenuous for plaintiffs to suggest that they do not understand that the request is limited to the specific "▓▓▓▓" referenced in LZ's June 2022 text messages, rather than all persons named "▓▓▓▓." To the extent Request No. 7 is temporally limited only to the "relevant period," the court will define that period as 2022. The overbreadth objection is overruled in part and granted in part. The court limits Request No. 7 to content on LZ's mobile phone that was generated in 2022.

**IT IS THEREFORE ORDERED** that Genesh's Motion to Compel the Production of Documents Responsive to Genesh's Fourth Request for Production of Documents (ECF 279) is granted, but the document requests are temporally modified as set forth above. The EEOC must supplement its discovery responses **within 14 days of the end of the U.S. Government shutdown**.

**IT IS FURTHER ORDERED** that this Memorandum and Order will be sealed **until 14 days after the end of the U.S. Government shutdown**, at which time the court will direct the clerk's office to unseal it. The EEOC and/or LZ may move to have portions of the Memorandum

16

and Order maintained under seal (through specific redactions) for a longer period, but any such motion must be filed in advance of the above date.

Dated October 20, 2025, at Kansas City, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge