## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, et al.,

        Plaintiffs,

        v.

GENESH, INC.,

        Defendant.

Case No. 24-2445-DDC-ADM

## MEMORANDUM AND ORDER

In this action, the Equal Employment Opportunity Commission ("EEOC") alleges that Genesh, Inc. ("Genesh"), the owner and operator of more than 50 Burger King restaurant franchises, violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 by, among other things, subjecting a class of female employees to sexual harassment. (ECF 1.) The matter is before the court on intervenor-plaintiff LZ's motion to compel the production of documents responsive to subpoenas issued to non-party Axis Point Coaching and Consulting and its employee Jana Stuart (together, "Axis Point"), over which Genesh has asserted attorney-client privilege and/or work-product protection. (ECF 345.) The court has examined the withheld documents *in camera*. For the reasons explained below, LZ's motion to compel is granted in part and denied in part.

## I.   BACKGROUND

The EEOC brought this public-enforcement action against Genesh based on alleged sexual harassment of employees at particular Burger King restaurants. (ECF 1.) To date, three former employees have intervened as plaintiffs in the action, including LZ. LZ alleges that when she

worked for Genesh in 2022, her supervisor sexually molested and statutorily raped her multiple times.  (ECF 353, at 5.)

In discovery, LZ issued document subpoenas to Axis Point and Stuart.  Axis Point is Genesh's outside consulting agency hired to advise on and conduct investigations of employee-harassment complaints at Genesh-owned restaurants.  (ECF 364-3, at 1-2; ECF 357-1, at 2.)  Pursuant to the Genesh-Axis Point service agreement, which was signed in 2020 and in effect during the time period relevant to this lawsuit, Axis Point was "a representative of Genesh, Inc." required to "regularly communicate with . . . [and] provide completed documentation of factual findings for each investigation to Genesh Inc.['s] designated corporate counsel."  (ECF 345-1, at 37.)  Since 2020, Axis Point has been Genesh's sole investigator for all employee-harassment complaints.  (ECF 364-3, at 5-6.)  When Genesh's human resources department receives an employee-harassment complaint, Genesh directs Axis Point to investigate the complaint.  (*Id.* at 11.)

On August 25, 2023, Genesh received notice from the EEOC that LZ had filed a charge of employment discrimination involving alleged sexual harassment by her supervisor.  Genesh asked Axis Point to investigate the matter, and specifically authorized Axis Point to act as Genesh's representative in assisting Genesh's counsel to defend against the claims and prepare a position statement for submission to the EEOC.  (ECF 357-1, at 2-3; ECF 345-1, at 37.)

The subpoenas LZ issued to Axis Point and Stuart commanded production of, among other things, email correspondence between Axis Point and Genesh's counsel discussing multiple investigations.  When Genesh learned that LZ had issued the subpoenas, Genesh directed Axis Point to redact certain responsive documents on the basis of attorney-client privilege and/or the work-product doctrine.  LZ disputes that the documents are subject to such protection.  At the

2

parties' request, the court convened a conference on December 11, 2025, to discuss the subpoena-related discovery.  (ECF 337.)  After hearing from the parties, the court granted LZ leave to file the present motion to compel.

At the court's direction, Genesh submitted unredacted copies of the email communications to the court for *in camera* review.  The communications that are the subject of LZ's motion to compel fall into six categories: (1) a September 2023 email exchange between Genesh's counsel and Stuart regarding the investigation of LZ's harassment charge (privilege log entry 28); (2) two September 2023 email exchanges between Genesh's counsel and Genesh's executive leadership (with Stuart copied) pertaining to legal advice about Genesh's action in response to LZ's charge and the subsequent investigation (privilege log entries 23-27, 29); (3) January 2024 email exchanges between Genesh's counsel, Genesh employees, and Stuart seeking and providing information in the investigation of intervenor-plaintiff Tauna Frederick's complaint (privilege log entries 17-22); (4) August and October 2024 email exchanges between Genesh's counsel and Stuart regarding procedures to follow in performing investigations and discussing Stuart's practices in past investigations (privilege log entries 6-16); (5) an October 2024 email from Genesh's counsel to Genesh's executive leadership (with Stuart copied) transmitting a legal memorandum (privilege log entry 5); and (6) April 2025 emails from Genesh's counsel to Stuart listing documents for Stuart to review in preparation for her deposition (privilege log entries 2-4).

## II.    LEGAL STANDARDS

"Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1) (emphasis added).  Here, Genesh asserts that the email communications listed above are privileged—pursuant to the attorney-client privilege and/or the work product doctrine—and thus

not discoverable.  LZ argues that the communications are not privileged, but even if they are, Genesh waived the privilege.

### Attorney-Client Privilege

Under federal common law applicable here, the attorney-client privilege protects "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotations omitted).  The privilege also protects advice given by the attorney in the course of representing the client.  *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)).  "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed." *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016); *see also In re Grand Jury Proc.*, 616 F.3d at 1183 (party asserting attorney-client privilege bears the burden to establish it applies). The burden of showing the privilege has not been waived also falls on the party claiming the privilege.  *In re Qwest Commc'ns, Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).

### Work-Product Doctrine

The work-product privilege is governed by a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3).  *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998).  That rule provides that a party ordinarily "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  FED. R. CIV. P. 26(b)(3).  "The Supreme Court has stated that, '[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'"  *Republic of Ecuador v. For Issuance of a*

4

*Subpoena Under 28 U.S.C. Sec. 1782(a)*, 75 F.3d 1179, 1185 (10th Cir. 2013) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)); *see also Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("[T]he work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions[;] it does not protect facts concerning the creation of work product or facts contained within work product."). Like the attorney-client privilege, the party asserting work-product protection bears the burden to demonstrate that it applies. *In re Grand Jury Proceedings*, 616 F.3d at 1185. But unlike the attorney-client privilege, the party claiming waiver of work-product protection has the burden to establish waiver. *Johnson v. Gmeinder*, 191 F.R.D. 638, 642-43 (D. Kan. 2000).

## III.    ANALYSIS

The court has conducted an *in camera* review and applied the above-mentioned legal principles to the subpoenaed email communications over which Genesh asserts privilege. As explained further below, the court finds that the majority of the documents are, as an initial matter, privileged from disclosure. The exception are emails sent from Genesh's counsel to Stuart directing her to review attached documents in preparation for her deposition (privilege log entries 2-4).[1] Of the otherwise-privileged documents, the court finds that Genesh waived privilege as to emails relevant to Genesh's investigations of LZ's sexual-harassment charges (privilege log entries 6-16 and 23-29). The court addresses LZ's specific arguments below.

---

[1] Additionally, the court takes no position on whether an October 2024 email from Genesh's counsel to Genesh's executive leadership transmitting a legal memorandum (privilege log entry 5) ultimately is privileged, as LZ's motion can only be read to challenge privilege based on Stuart being copied on the email. The court rejects that specific challenge below.

A.    <u>Whether Attorney-Client Privilege Can Apply to Emails Involving Stuart</u>

First, LZ argues emails to or from Genesh's counsel in which Stuart is the sender or a recipient (direct or copied) are not privileged because Stuart is an outside third party.  LZ reasons that Stuart was Genesh's human-resources consultant—and not "counsel's agent"—such that communications involving Stuart fall outside the protective "confidential communications between a client and attorney" umbrella.  While LZ's factual contentions are accurate (no one disputes that Genesh engaged Stuart as an outside consultant to investigate employee-harassment complaints), her conclusion about the legal effect of this relationship is incorrect.

The fallacy in LZ's argument stems from not recognizing that companies like Genesh often act through authorized representatives.  A company's non-employee consultants can serve as the "client" facilitating legal advice on the company's behalf.  *See, e.g., TP ST Acquisition, LLC v. Lindsey*, No. 21-2020-JAR, 2022 WL 252001, at *10 (D. Kan. Jan. 26, 2022) (finding communications between an attorney and a consultant engaged to help client facilitate a business transaction were privileged); *Pipeline Prods., Inc. v. Madison Cos.*, No. 15-4890-KHV-ADM, 2019 WL 1900341, at *3 (D. Kan. April 29, 2019) (finding communications between an independent contractor and attorneys covered by the attorney-client privilege); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 2555834, at *6 (D. Kan. June 13, 2017) (holding privilege not waived when three science consultants were copied on an email between client's employees and outside counsel); *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2012 WL 234024, at *13 (D. Kan. Jan. 25, 2012) ("The presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses a commonality of interest with the client." (cleaned up)).  "Thus, when an authorized . . . consultant acts as a company's representative in communications necessary to provide the

6

company legal advice, the consultant steps into the shoes of the client." *Black v. Union Pac. R.R. Co.,* No. 23-1218-EFM-ADM, 2025 WL 2770681, at *7 (D. Kan. Sept. 29, 2025). Here, LZ herself alleges that Genesh engaged Axis Point to act as Genesh's representative in investigating sexual-harassment complaints. Moreover, the Axis Point-Genesh service agreement specifically directs Axis Point to communicate with Genesh's counsel about harassment investigations. Thus, Axis Point *is* Genesh—the client, not a third party—when communicating with counsel about the sexual-harassment allegations at issue in this lawsuit. The attorney-client privilege applies to those confidential communications. For the same reasons, copying Stuart on emails between Genesh employees and counsel did not waive the attorney-client privilege. *See id.* ("In other words, there is no third party in the picture to affect waiver; the communications are simply between a client (acting through a consultant) and its attorney.").

**B.    Whether Counsel's Selection of Documents for Stuart to Review in Preparing for Her Deposition is Protected Work Product**

LZ's next argument seeks to compel emails from Genesh's counsel to Stuart in April 2025 listing approximately 10 documents for Stuart to review in preparation for her deposition (privilege log entries 2-4). Genesh asserts work-product protection over the information in the emails. The Tenth Circuit does not appear to have addressed the issue of whether an attorney's selection of documents to show a witness in preparation for a deposition constitutes work product, and the court's analysis of non-binding caselaw on this question indicates that courts generally take a more nuanced, rather than categorical, approach to this issue. *Compare Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (finding privileged attorney selection and compilation of "numerous documents" for witness to review in preparation for deposition) *and In re Allen,* 106 F.3d 582, 608 (4th Cir. 1997) (finding selection of employment records for review was work product), *with In re*

*San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1018 (1st Cir. 1988) (upholding district-court protocol requiring pre-disclosure of exhibits an attorney plans to use during a deposition) *and N. Nat. Gas Co. v. Approximately 9117.53 acres in Pratt, Kingman, & Reno Ctys., Kan.*, 289 F.R.D. 644, 647 (D. Kan. 2013) (collecting District of Kansas cases holding an attorney's selection of documents to show a witness does not constitute work product).

LZ's argument, in full, is this single sentence: "Some redacted communications appear to be email correspondence only including the documents for her to review in preparing for her deposition, which are not privileged." (ECF 345, at 2.) LZ addresses none of the above (or any other) legal authority, nor includes any legal analysis to support her conclusory statement. As such, the court could deem this argument waived and not address it. *See Arizona Pub. Serv. Co. v. U.S. E.P.A.*, 562 F.3d 1116, 1130 (10th Cir. 2009) ("We need not address unsupported, conclusory arguments."); *Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213, 1217 (10th Cir. 2008) (deeming argument waived for failure to cite any supporting legal authority or record evidence). But, having reviewed the subject emails *in camera*, the court easily finds that counsel's rudimentary list of a handful of basic case pleadings and documents does not reflect "the mental processes of the attorney." *Republic of Ecuador*, 75 F.3d at 1185. Under these circumstances, the information in the emails is not subject to work-product protection. Genesh is ordered to produce unredacted versions of the emails listing documents for review (privilege log entries 2-4).

### C.    Whether Genesh Waived Privilege over Subpoenaed Documents by not Asserting Privilege Objections in Response to LZ's Written Discovery

Third, LZ asserts that "Genesh waived any claim of privilege as to communication between Stuart and its employees or representatives" by failing to "assert any privilege objections to . . . discovery requests" served by plaintiffs on Genesh. (ECF 345, at 4.) LZ specifically cites

Genesh's responses to Request No. 16 of LZ's second request for production of documents and Request No. 3 of LZ's third request for production of documents, both of which seek communications between Axis Point and Genesh. (ECF 345-2, at 2-5.)  But this argument misconstrues the procedural posture of the current dispute.

The current motion to compel is not directed to documents that Genesh produced in response to LZ's requests for production of documents.  Rather, it is directed to documents that non-parties Axis Point and Stuart were prepared to produce in response to subpoenas that LZ issued to them; and Genesh, as the holder of the attorney-client privilege and/or work-product protection, interposed objections to producing the documents without redactions.  The reasons for this discrepancy (*i.e.*, that Axis Point produced them whereas Genesh did not) are unclear.  As best as the court can glean, it appears to be the result of Genesh's ESI search parameters, and perhaps even whether they were run correctly.  As LZ recently recounted, "Email communications between Genesh and Stuart are the subject of the pending ESI issues" being addressed by the Special Master appointed by the court.  (ECF 361, at 2.)  The Special Master's December 23, 2025 report explains that because of "search syntax issues . . . and Barracuda's limitations," Genesh's ESI document search "missed potentially responsive emails and attachments, causing the eventual review and production by Defendant to be deficient."  (ECF 347, at 6-7.)  Genesh is now correcting that deficiency under the Special Master's order and, should Genesh produce additional documents that it believes warrant attorney-client privilege and/or work-product protection, it may assert such privileges as to its own document production at that time.  But LZ's argument that Genesh waived privilege by not asserting it over email communications that Axis Point and Stuart produced in response to LZ's subpoenas issued to them is without merit.  The court finds no waiver on this basis.

### D.    Whether Genesh Waived Privilege by Not Filing a Motion to Quash the Subpoenas

LZ's next argument for waiver is that it was effected when "Genesh failed to file a motion to quash or a motion for a protective order in response to the Subpoenas" within the 14-day objection period set by Federal Rule of Civil Procedure 45(d)(2)(B), and instead waited for LZ to file a motion to compel.  (ECF 345, at 4-5.)  The court rejects this argument, which inaccurately characterizes the procedural background of this dispute.

The parties followed the court's procedural rules for raising and resolving Genesh's objections to the subpoenas.  On July 1, 2025, LZ's counsel sent an email to the court requesting a conference on, among other discovery matters, "subpoenas to Defendant's investigator."  See D. KAN. RULE 37.1(a).  The court convened a discovery conference on July 10, during which the parties discussed LZ's proposed subpoenas to Axis Point.  (*See* ECF 219.)  Genesh stated its objections to the subpoenas, asserting that they were overly broad and sought privileged communications with attorneys.  LZ appears to have issued the subpoenas that same day.  (ECF 345-7.)  On November 26, following a temporary stay of the case during the U.S. Government shutdown (*see* ECF 315), the parties again contacted the court to request a discovery conference on, among other things, "the Subpoena issue[d] to Axis Point/Stuart."  In LZ's counsel's email submission of issues to the court the day before the set conference, LZ's counsel stated one issue to be addressed was "privileges that are being asserted by Defendant" as to the subpoenas, and included Genesh's privilege log as an attachment to her email.  The court again addressed Genesh's objections to the subpoenas during a discovery conference on December 11.  (ECF 337, 340).  After hearing from the parties, the court determined that the most efficient way to resolve the dispute would be via plaintiffs filing "a motion to compel Genesh, Inc. to produce documents

withheld from the Axis Point Consulting/Jana Stuart production on the basis of privilege." (ECF 337, at 1.) LZ followed that directive in filing the present motion. Against this backdrop, the court finds no procedural privilege waiver by Genesh.

### E.    Whether Genesh Waived Privilege by Asserting the *Faragher/Ellerth* Affirmative Defense

LZ's final—and only compelling—waiver argument is that Genesh waived any attorney-client or work-product privilege as to communications about Axis Point's investigation of LZ's complaint by asserting the so-called *Faragher/Ellerth* affirmative defense to her claims.

The *Faragher/Ellerth* defense provides that, in certain circumstances, an employer defending against a claim of sexual harassment may avoid liability or damages by establishing, among other things, that "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998). An employer invoking the affirmative defense generally must show that it "launch[ed] a prompt investigation to determine whether the [employee's] complaint is justified." *Debord v. Mercy Health Sys. of Kan., Inc.,* 737 F.3d 642, 654 (10th Cir. 2013) (quoting *Helm v. Kan.*, 656 F.3d 1277, 1289 (10th Cir. 2011)). "[T]he reasonableness of the employer's investigation – *i.e.* its thoroughness – and the appropriateness of any disciplinary action that the employer took against the alleged harasser in light of that investigation are . . . matters that the jury must consider in evaluating a *Faragher/Ellerth* affirmative defense." *Culp v. Remington of Montrose, LLC*, No. 18-cv-02213-MSK-GPG, 2020 WL 2316099, at *1 (D. Colo. May 11, 2020). Thus, "[w]hen a party puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, that party waives any privilege that might otherwise apply to documents concerning the

11

investigation." *Doe v. USD No. 237*, No. 16-2801-JWL-TJJ, 2019 WL 1925107, at *5 (D. Kan. April 30, 2019).

Here, Genesh's answer to LZ's amended complaint asserts the *Faragher/Ellerth* affirmative defense, stating "With respect to the claims of sexual harassment, Defendant asserts that it exercised reasonable care to prevent and promptly correct any harassing behavior and that the Intervenor unreasonably failed to take advantage of the preventive or corrective opportunities provided by Defendant or to otherwise avoid harm. Accordingly, any liability is precluded under the Faragher-Ellerth defense." (ECF 356, at 7; *see also* ECF 27, at 12 (Genesh's answer to LZ's original complaint).) And Genesh's Third Supplemental Rule 26(a)(1) Disclosures identify Stuart as an individual that it may use to support its defenses based on information she has about "allegations of harassment and retaliation and investigative process and procedures." (ECF 345-3, at 2.) In addition, Genesh answered an interrogatory asking it to identify the material facts that support its *Faragher/Ellerth* affirmative defense by stating that, "Defendant exercised reasonable care to prevent and promptly correct any harassing behavior by . . . [p]romptly undertaking effective investigations to address harassment complaints." (ECF 364-1, at 2-3.)

The record is therefore clear that Genesh intends to use Stuart's investigation of LZ's sexual-harassment complaint to meet its burden of showing it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and thereby avoid liability and damages under *Faragher/Ellerth*. As a result, Genesh has put the reasonableness of its investigation and the actions it took in response to the investigation (such as terminating LZ's harasser) at issue. *See Doe v. USD 237*, No. 16-2801-JWL, 2019 WL 2612941, at *5 (D. Kan. June 26, 2019) (ruling, "a party puts its investigation at issue by asserting the *Faragher* defense based on that investigation"); *Norris v. City & Cnty. of Denver*, No. 1:20-cv-01226-DDD-SKC, 2022 WL 17340403, at *5 (D.

12

Colo. Nov. 30, 2022) (holding, "the 'reasonableness of the employer's investigation – *i.e.* its thoroughness – and the appropriateness of any disciplinary action that the employer took against the alleged harasser in light of that investigation are also matters that the jury must consider in evaluating a *Faragher/Ellerth* affirmative defense" (internal quotation and citation omitted)). Accordingly, Genesh has "waived the privilege with respect to the contents of that investigation." *Doe,* 2019 WL 2612941, at *6. Fairness requires giving LZ access to information allowing her to evaluate this defense, *i.e.,* to critique the reasonableness of Genesh's investigation and the appropriateness of its actions taken in response.

Genesh argues that the waiver does not go so far as to cover "the content of confidential communications between Ms. Stuart and counsel at issue" or "counsel-directed investigative communications." (ECF 357, at 4.) The court finds no support for this argument. Confidential communications with counsel about an investigation into a sexual-harassment complaint are precisely the type of attorney-client communications that are waived by assertion of the *Faragher/Ellerth* affirmative defense. *See Norris*, 2022 WL 17340403, at *5 (holding attorney's supervision of and collaboration with investigator was "precisely the type of involvement which can lead to a waiver of the attorney-client privilege or work-product protection in the face of a *Faragher/Ellerth* affirmative defense"); *Culp*, 2020 WL 2316099, at *2 ("The Plaintiffs' entitlement to discovery of [counsel's] advice . . . serves to ensure that any influence by her that affected the thoroughness of the investigation is brought to light."). For example, counsel's advice to an investigator on what steps should be taken or procedures should be followed in conducting an investigation, as well as an investigator's report to counsel on witnesses interviewed as part of the investigation, is relevant to the jury's consideration of whether the investigation was sufficiently thorough. *See id.*

13

Applying these principles, the court concludes that Genesh has waived attorney-client and work-product privilege over email communications with counsel about the specific investigation of LZ's charges (privilege log entry 28), steps to take in all investigations—which would include the LZ investigation (privilege log entries 6-16), and subsequent actions taken by Genesh in response to the LZ investigation (privilege log entries 23-27, 29). Axis Point is ordered to produce these documents without redactions.[2]

**IT IS THEREFORE ORDERED** that LZ's Motion to Compel Production of Documents (ECF 345) is granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that by **February 20, 2026**, Axis Point and Stuart must produce to LZ the documents listed at entries 2-4, 6-16, and 23-29 without redactions.

Dated February 13, 2026, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

---

[2] LZ's motion includes an additional, one-sentence waiver argument: "Further, any privilege is waived for all communication forwarded to or with former employees post-employment, including Matt Stagner." (ECF 345, at 3.) The court does not have enough information to decide this underdeveloped, conclusory argument. A person who appears to be Matt Stagner was copied via email to matt@geneshinc.com on the January 2024 email exchanges between Genesh counsel and Stuart seeking and providing information in the investigation of intervenor-plaintiff Tauna Frederick's complaint (privilege log entries 17-22). But if these are the communications challenged by LZ's argument, the information available suggests Stagner was a Genesh employee at the time he received the emails to his Genesh email address, thus making the argument inapplicable.

14