**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, et al.,

        Plaintiffs,

        v.

GENESH, INC.,

        Defendant.

Case No. 24-2445-AJP-ADM

**MEMORANDUM AND ORDER**

In this action, the Equal Employment Opportunity Commission ("EEOC") alleges that Genesh, Inc. ("Genesh"), the owner and operator of more than 50 Burger King restaurant franchises, violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 by, among other things, subjecting a class of female employees to sexual harassment. (ECF 1.) Three former Burger King employees have intervened as plaintiffs in the action, including LZ. This matter is now before the court on LZ's Motion for a Protective Order, For Sanctions & Disqualification of Defendant's Counsel. (ECF 419.) The motion is based on Genesh's contact with counsel for one of LZ's treating providers. For the reasons explained further below, the court finds nothing inappropriate in Genesh's actions and therefore denies the motion.

## I.    BACKGROUND

LZ began working at a Burger King restaurant in May 2022, when she was 15 years old. She alleges that her manager, Stephen Wampler, sexually molested and statutorily raped her multiple times between May and October 2022. (ECF 17, at 5.) After LZ and her parents reported Wampler to law enforcement, he was arrested in November 2022. LZ began seeing a mental health

1

counselor in April 2023.  From April 24 to September 29, 2023, LZ saw Brooke Kirby-Adamek[1] at Abella Psychotherapy & Consulting, LLC ("Abella"), before transferring to another therapist in the same practice.  LZ disclosed Kirby-Adamek as a non-retained expert in this action.  (ECF 81.)

On September 17, 2025, Genesh filed a notice of taking Kirby-Adamek's deposition.  (ECF 289.)  On September 26, Genesh served Kirby-Adamek a subpoena to appear for the deposition on October 8.  (ECF 394.)  On September 30, Genesh informed the other parties that it expected to cancel Kirby-Adamek's deposition.  (ECF 419-2, at 2.)  In response, LZ asked Genesh for "a copy of all documents including the subpoena that was served on Brooke Kirby."  (ECF 419-2, at 1.)  The following day, Genesh replied that it did not provide Kirby-Adamek any document other than the subpoena and deposition notice.  (*Id.* at 1.)  On October 6, Kirby-Adamek executed an affidavit stating that she had no recollection of LZ's treatment or diagnoses, no longer worked at Abella, and no longer had access to her treatment notes from Abella.  (ECF 421.)  That same day, Genesh confirmed to the parties that it was canceling Kirby-Adamek's deposition.  (ECF 419-4.)

On March 9, 2026, Genesh produced Kirby-Adamek's affidavit to plaintiffs.  (ECF 419-6.)  The affidavit referenced and attached a letter from Kirby-Adamek dated December 30, 2024, and addressed to "to whom it may concern," broadly summarizing LZ's treatment, symptoms, and recommended course of continued treatment.  (ECF 421, at 3.)  On March 16, LZ sent a letter to Genesh, stating "it appears that communications occurred with [Kirby-Adamek] in violation of the Health Information Portability and Accountability Act (HIPAA)" and asking Genesh to provide information about Genesh and its counsel's communications with Kirby-Adamek.  (ECF 419-6, at 1.)

---

[1] The parties inconsistently refer to this therapist by the surnames Kirby and Ademek.  For clarity, the court will use the surname Kirby-Ademek.

2

Genesh responded on March 18, asserting there was no HIPAA violation and pointing out that, as to the December 30 "to-whom-it-may-concern" letter, it was LZ who had produced the letter in discovery. (*See* ECF 419-6, at 3.) Genesh went on to explain the origin of the affidavit in both its March 18 letter and a subsequent March 25 letter. Genesh represents that after Kirby-Adamek received the subpoena, she retained attorney Emma Bean to guide her response. (ECF 438-1, 438-2.) Bean then began communicating with defense counsel about the anticipated scope of Kirby-Adamek's testimony. (438-1.) Bean suggested providing an affidavit in lieu of a deposition, and Genesh accepted that offer. (*Id.* at 4.) The affidavit was prepared with the involvement of counsel for both Genesh and Kirby-Adamek. At no time did Genesh's counsel communicate directly with Kirby-Adamek. (ECF 419-6, 438-1, 438-2.) Bean confirmed this explanation and sequence of events in an April 2 letter to LZ's counsel. (ECF 438-2.) In that letter, Bean also stated that Kirby-Adamek had produced no treatment records but instead referenced the December 30 treatment letter that LZ had produced in this case. (ECF 438-2.) Additionally, Genesh's response to one of LZ's document requests certified that its counsel never communicated with Kirby-Adamek directly. (ECF 419-10, at 2 (stating that as to "the existence of communications between counsel for Genesh and Ms. Kirby, no such communications exist").)

## II.    ANALYSIS

Based on this series of events, LZ filed the present motion asking the court to impose significant sanctions, including the disqualification of Genesh's counsel, and for a protective order prohibiting Genesh's counsel from contacting any of plaintiff's medical providers ex parte. LZ argues that by speaking with Kirby-Adamek's attorney about Kirby-Adamek providing the affidavit instead of sitting for a deposition, defense counsel participated in Kirby-Adamek disclosing LZ's personal health information ("PHI") in violation of HIPAA. LZ appears to assert

3

that HIPAA required defense counsel to give LZ notice of defense counsel's communications with

Kirby-Adamek's attorney and then only communicate "after the appropriate scope of the ex parte

communications [was] determined and ordered by the court." (ECF 419, at 3.)

### A. The Motion Rests on a Faulty Legal Premise

To begin, LZ's motion rests on a faulty legal premise—namely, that defense counsel was

*required* to obtain a court order to communicate ex parte with a plaintiff's treating provider. In

support, LZ misreads case law to somehow impose on this court an obligation to supervise counsel

to ensure that a treating provider complies with HIPAA when communicating with defense

counsel. She cites case law from this district, none of which actually supports this requirement.

And she further relies on out-of-state, largely outdated case law that also does not support this

contention. In short, none of the case law LZ relies on is persuasive.

In the District of Kansas, courts have long permitted defense counsel to conduct ex parte

interviews of treating providers where a plaintiff's condition is at issue in a case. *See, e.g., D.M.*

*ex rel. Morgan v. Wesley Med. Ctr. LLC*, No. 18-2158-KHV-KGG, 2018 WL 6696561, at *4 (D.

Kan. Dec. 20, 2018) (recognizing "well-established practice" in the district permitting ex parte

interviews of treating physicians who are fact witnesses, consistent with HIPAA); *Williamson v.*

*Joslin*, No. 15-CV-2657-JWL-TJJ, 2015 WL 5125421, at *2–3 (D. Kan. Sept. 1, 2015) (holding

that ex parte communications with treating providers are permissible where the plaintiff's

condition is at issue and that HIPAA does not prohibit such communications); *Lake v. Steeves*, 161

F.R.D. 441 (D. Kan. 1994) (reaffirming permissibility of informal ex parte interviews with treating

physicians as a more efficient and less costly discovery method); *Bryant v. Hilst*, 136 F.R.D. 487

(D. Kan. 1991) (denying protective order and permitting ex parte communications with treating

physicians, reasoning that prohibiting such contact would unfairly limit access to non-duplicable

information).  Such communication may occur without a court order explicitly authorizing the same, and parties often pursue this discovery without court involvement.  Sometimes, however, a defendant seeks an order authorizing ex parte communication (often at the provider's request) or, conversely, a plaintiff seeks an order prohibiting such communication.  *See, e.g., Guarnotta v. Ashcom*, No. 18-CV-01099-EFM-GEB, 2018 WL 2445033, at \*2 (D. Kan. May 31, 2018) ("What WMC and similarly-situated defendants are seeking is an order from a court that allays the medical provider's fears that talking with such a party may violate their obligations under HIPPA—nothing more.").  In such a procedural posture—when the parties bring the matter before the court by motion—the court will decide the motion and may issue an order permitting or limiting ex parte provider communication.  As a result, the bulk of the district's case law in this area focuses on provider-access orders.  But to be clear, LZ has not cited a case in this district, and the court knows of none, *requiring* defense counsel to seek and obtain such an order before communicating with a provider.

LZ relies on the undersigned judge's opinion in *Reyes v. Apex Trucking, Inc.* to support her position that a provider-authorization order is required prior to counsel communication with a treating provider.  No. 20-2435-TC-ADM, 2021 WL 259406 (D. Kan. Jan. 26, 2021).  But LZ misconstrues *Reyes*.  *Reyes* arose in the procedural posture mentioned above—the plaintiff filed a motion for a protective order prohibiting defense counsel from conducting ex parte interviews of Reyes's healthcare providers.  *Id.* at \*1.  The court denied this request, explaining that plaintiff had "not identified any governing law, any provision of the Federal Rules of Civil Procedure, or any persuasive authority that would prohibit defense counsel from interviewing healthcare providers who are presumably fact witnesses in this action."  *Id.* at \*1-\*2.  On the flip side, the defendant asked the court to enter a proposed order authorizing ex parte communications and

5

requiring providers to produce medical records to defense counsel. *Id.* at *3. The court also rejected the defendant's proposed order because it was too broad, given that it required non-parties to produce documents without giving the non-parties an opportunity to be heard, was not limited to a relevant time frame, and was not limited to the subject matter of the action. *Id.* at *3. Nothing in *Reyes*, however, suggests that defendants must always obtain a court order before interviewing treating providers ex parte.

LZ also directs the court to a number of orders from state courts that are neither binding nor persuasive. The orders have no precedential value because the Federal Rules of Civil Procedure govern the scope of discovery in this case. *KCOM, Inc. v. Employers Mut. Cas. Co.*, 829 F.3d 1192, 1199 (10th Cir. 2016). Therefore, state court judges' rulings on the contours of allowable discovery in state-court cases, which are subject to different discovery rules, are not binding on this court. That said, the court has reviewed those cases to determine whether they have any persuasive value. They do not.

For example, LZ relies upon cases brought against health-care providers that discuss the provider's liability to a patient. *See, e.g., Byrne v. Avergy Ctr. For Obstetrics & Gynecology, P.C.,* 175 A.3d 1 (Conn. 2018). By contrast, in the present motion LZ is challenging defense counsel's actions. It bears noting that LZ states that she has (separately) raised the issue of whether Kirby-Adamek violated HIPAA with the U.S. Department of Health and Human Services and the Kansas Behavioral Sciences Regulatory Board. The court expresses no opinion on the proper disposition of any such proceeding, but rather simply notes that this seems to be a more appropriate avenue for LZ to pursue her grievance with her treating provider. Indeed, pursuing a claim against the treating provider—not the roundabout remedy of asking the court to manage defense counsel's communications in discovery—was the route the plaintiff pursued in *Byrne*.

6

In another example, LZ cites two New Jersey cases in which defense counsel was deemed to have improperly coerced providers into providing treatment records by including a cover letter with the subpoenas advising the providers they could avoid appearing for deposition by forwarding copies of plaintiff's treatment records to defense counsel. *See Crescenzo v. Crane*, 796 A.2d 283, 286 (N.J. 2002); *Cavallaro v. JAMCO Property Mgmt.*, 760 A.2d 353, 360 (N.J. Super. 2000). LZ also cites an Illinois case in which defense counsel included with a subpoena the defendant's interrogatory answer listing the providers "expected testimony." *Moss v. Amira*, 826 N.E. 2d 1001, 1008-09 (Ill. App. 2005). But each of those cases involved counsel's violation of state court procedures in ways that circumvented state privilege laws by influencing (e.g., coercing or incentivizing) the treating provider to improperly disclose medical records, *see, e.g.*, *Crescenzo*, 796 A.2d at 288 (assuming the subpoenaed records were privileged); *Cavallaro*, 760 A.2d at 565 ("There is no legitimate argument that the doctor's records were anything other than privileged under the psychologist-patient or physician-patient privileges." (citations omitted)), or taint the evidence, *see, e.g.*, *Moss*, 826 N.E.2d at 1007-09 (finding counsel's conduct amounted to what is known as a "*Petrillo* violation" under Illinois law).

These cases are distinguishable—and hence unpersuasive—for multiple reasons. To begin, defense counsel in this case did not violate any of this court's procedural rules. There is no dispute that counsel properly noticed and served the subpoena, which prompted the subsequent communications with Kirby-Adamek's attorney, and this court allows defense counsel to communicate ex parte with treating providers. Further, those cases involved counsel's alleged breach of state privilege laws, not an alleged HIPAA violation—as plaintiff invokes here—because all of those cases involved conduct that predated HIPAA's effective date in 2003. *See Heitz v.*

*Campbell Cnty. Mem'l Hosp.*, No. 02-CV-1058-B, 2005 WL 8155357, at *2 (D. Wyo. Apr. 15, 2005) (noting "HIPAA became effective in 2003").

In short, LZ's motion is premised on legal misconceptions. LZ has not cited any case—much less any binding or persuasive authority—holding that defense counsel may not communicate ex parte with a provider's counsel that reaches out in response to a subpoena to arrange for the provider to swear an affidavit in lieu of testifying. LZ's theory that such contact is impermissible is both legally unsupported and detached from the practical reality of discovery practice. The court finds nothing unusual in such an arrangement, particularly where, as here, the provider has no personal recollection of the topics listed in the subpoena, such that convening a deposition would waste everyone's time and resources. The court therefore denies the motion as unsupported by the law.

### B.    The Motion is Also Factually Unsupported

The court also denies LZ's motion as unsupported by the factual record, which does not establish that defense counsel engaged in any wrongful conduct. Even if the court were to consider the possibility of imposing sanctions against a party or its attorney for violating this court's rules or a treating provider's HIPAA violation, the record belies LZ's argument that any such misconduct occurred here. The record does not support that Kirby-Adamek disclosed LZ's PHI in violation of HIPAA. LZ does not dispute that the PHI Kirby-Adamek referenced in, and attached to, her affidavit was a medical letter that LZ herself produced in discovery. Thus, it was LZ that disclosed the PHI to Genesh—her provider did not. Kirby-Adamek's affidavit confirmed that she treated LZ, but LZ herself already disclosed this information in her Rule 26 disclosures. (ECF 81.) And then Kirby-Adamek went on to disclaim any recollection of LZ's treatment or diagnoses, and she swore that she no longer has access to LZ's medical records. (ECF 421.) In

8

other words, Kirby-Adamek has no independent knowledge of, or access to, LZ's PHI that she could disclose.

LZ also complains that "Defendant has refused to produce its communications with the Provider, preventing Plaintiff from knowing what representations were made to the Provider." (ECF 419, at 6.)  But, as set forth above, Genesh's counsel served the subpoena alone and then communicated only with attorney Bean, not Kirby-Adamek herself.  So in this case there is even the further divide that defense counsel did not communicate with Kirby-Adamek herself, but instead communicated only with Bean, who advised Kirby-Adamek about HIPAA's requirements. *Cf. Crescenzo*, 796 A.2d at 290 (suggesting physicians contact a personal attorney or the attorney serving the subpoena as "practical alternatives" to disgorging PHI in response to a subpoena). Thus, there are no communications with Kirby-Adamek that exist to be produced, and Genesh stated as much in its response to LZ's fifth request for production of documents.  (ECF 419-10, at 2.)

In short, LZ's motion is not only premised on a misreading of the law, but it is also premised on a misguided version of the facts.  The court finds nothing troubling in defense counsel's ex parte communications with Kirby-Adamek's attorney.  Defense counsel's ex parte communication is permissible under this district's case law.  The motion is therefore also denied because the court finds no evidence that Genesh's counsel sought to induce a HIPAA violation.

### C.    Sanctions are Not Warranted

In view of the above, it goes without saying that LZ's request for sanctions are likewise an overreach in every respect.  To the extent LZ asks the court to take the extraordinary step of disqualifying defense counsel or imposing other sanctions based on an "ethical violation," the motion is denied.  *See Hammond v. City of Junction City, Kansas,* 167 F. Supp. 2d 1271, 1288 (D.

Kan. 2001) ("The Court must determine a motion to disqualify counsel by measuring the facts of the particular case.  The moving party must show proof that is more than mere speculation and sustains a reasonable inference of a violation."); *Jackson v. Soave Auto. Grp., Inc.,* No. 23-cv-02403-DDC-TJJ, 2024 WL 4501042, at *4 (D. Kan. Oct. 16, 2024) ("The court reviews motions to disqualify with extreme caution because such motions can be misused as techniques of harassment.  The moving party has the burden of showing the grounds for disqualification, and the proof must be more than mere speculation and must sustain a reasonable inference of a violation." (cleaned up)).

The court also denies LZ's nebulous request to enter a protective order prohibiting future ex parte contact with LZ's providers by defense counsel.  Pursuant to Federal Rule of Civil Procedure 26(c)(1), the court may issue an order, for good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  "The party seeking a protective order has the burden to demonstrate good cause."  *Wuhan Healthgen Biotechnology Corp. v. Expresstec LLC*, No. 21-4008-KHV-ADM, 2025 WL 4670926, at *1 (D. Kan. July 8, 2025).  To demonstrate good cause, the party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).  LZ has not shown good cause for the requested protective order. She does not discuss Rule 26(c) or the good cause standard, nor does she advance any arguments that establish good cause.  LZ has not suggested how she would be at risk of "annoyance, embarrassment, oppression, or undue burden or expense" should Genesh's counsel be permitted to speak ex parte with her providers.

In addition, as discussed above, such a wholesale prohibition would be inconsistent with the district's practice.  *See Reyes*, 2021 WL 259406 at *1 (denying motion for protective order

10

prohibiting ex parte interviews with fact-witness providers and recognizing "the unbroken weight of authority in this district [authorizing] such ex parte interviews").  Further, without specific good cause for such a prohibitive protective order, entering one would run afoul of the Federal Rules of Civil Procedure, which are to be construed "to secure the just, speedy, and inexpensive determination of every action."  FED. R. CIV. P. 1.  Informal discovery of fact witnesses is both expedient and less expensive than formal discovery, and therefore should be encouraged, not discouraged.  LZ's providers are of course welcome to confer or refuse to confer with any party—just as any fact witness may do.

As a final matter, the court addresses LZ's contention that Genesh "withheld the Affidavit for over five months, until shortly before the close of discovery, further prejudicing L.Z. by denying timely notice and a fair opportunity to explore statements in the Affidavit."  (ECF 458, at 2.)  If LZ truly wished to explore the statements in Kirby-Adamek's affidavit, she could have sought the other parties' consent to allow the deposition (ECF 475, at 33 (noting the parties may still conduct discovery by agreement after the discovery deadline)), or asked for *that* as a remedy to explore what she perceives as prejudice from the alleged HIPAA violation.  Yet LZ never sought to take that deposition in the five months since Genesh produced Kirby-Adamek's affidavit or by way of the present motion.  LZ's attempt to shift the blame from Kirby-Adamek for her alleged HIPAA violation to Genesh and its counsel is not well received.  Such gamesmanship is not supported by the facts or the law.

**IT IS THEREFORE ORDERED** that  LZ's Motion for a Protective Order, For Sanctions & Disqualification of Defendant's Counsel (ECF 419) is denied.

11

Dated July 28, 2026, at Kansas City, Kansas.

s/ Angel D. Mitchell

Angel D. Mitchell

U.S. Magistrate Judge
