**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.,

Plaintiffs,

v.

GENESH, INC.,

Defendant.

Case No. 24-2445-AJP-ADM

**MEMORANDUM AND ORDER**

This matter comes before the court on intervenor-plaintiff Lucille Zachariah's motion to compel defendant Genesh, Inc. ("Genesh") to produce communications between Genesh's counsel and counsel for Zachariah's previous mental health provider who executed an affidavit in the case. (ECF 537.) Genesh has withheld the communications as protected work product. For the reasons explained below, the court finds that Genesh has met its burden to show that work-product protection applies, and Zachariah has not met her burden to establish waiver of such protection. Zachariah's motion is therefore denied.

## I. BACKGROUND

Genesh owns and operates more than 50 Burger King restaurant franchises. In this action, the Equal Employment Opportunity Commission alleges Genesh subjected a class of female employees to sexual harassment. Zachariah worked at one of the restaurants and alleges that her manager sexually molested and statutorily raped her multiple times between May and October

2022. For five months in 2023, Zachariah was treated by therapist Brooke Taylor Adamek.[1] Zachariah disclosed Adamek as a non-retained expert in this action. (ECF 81.)

On September 26, 2025, Genesh served Adamek a subpoena to appear for a deposition. Adamek retained attorney Emma Bean to help guide her response. On September 29, Bean emailed Genesh's counsel about the anticipated scope of Adamek's testimony. Bean suggested providing an affidavit in lieu of a deposition, and Genesh accepted that offer. (ECF 438-1, at 4.) The affidavit was prepared with the involvement of both Bean and Genesh's counsel. At no time did Genesh's counsel communicate directly with Adamek. (ECF 419-6, 438-1, 438-2.) Adamek executed the affidavit on October 6. The affidavit stated that Adamek had no recollection of Zachariah's treatment or diagnoses, and that Adamek no longer had access to her treatment notes. (ECF 421.) Genesh then canceled Adamek's deposition. (ECF 419-4.)

On March 9, 2026, Genesh produced Adamek's affidavit to plaintiffs. (ECF 419-6.) On March 16, Zachariah sent a letter to Genesh, stating "it appears that communications occurred with [Adamek] in violation of the Health Information Portability and Accountability Act (HIPAA)" and asking Genesh to provide information about Genesh and its counsel's communications with Adamek. (ECF 419-6, at 1.) Genesh responded, asserting there was no HIPPA violation and explaining the origin of the affidavit. (ECF 438-1, 438-2.) Zachariah requested a discovery conference to address the potential HIPPA violation and Genesh's refusal to provide its communications with Bean. The court convened the conference on April 6, and after hearing from the parties, granted Zachariah leave to file a motion on the issue. (ECF 400, at 20; 401.) On May 1, Zachariah filed a Motion for a Protective Order, For Sanctions & Disqualification of

[1] Adamek is also known as Brooke Kirby.

Defendant's Counsel, based on Genesh's counsel's contact with Bean. (ECF 419.) Zachariah asserted that Genesh's counsel participated in Adamek's violation of HIPPA. In her request for relief, Zachariah asked the court to order Genesh "to produce all communications with the Provider and her counsel." (*Id.* at 10.) On July 28, the court denied the motion, finding it unsupported by both the facts and law. (ECF 479.) Zachariah filed an objection to the order of denial, which remains pending before the district judge. (ECF 492.)

On June 3, the court conducted a pretrial conference. During the conference, Zachariah raised a dispute regarding Genesh's response to her Fifth Request for Production of Documents, which sought "[a]ll document and communications with, about, discussing Brook Taylor Adamek." (ECF 475, at 33; ECF 537-2, at 1.) Genesh's discovery response objected to production on the grounds that the information sought is not relevant and is protected by the work-product doctrine. (ECF 537-2, at 1-2.) In subsequent meet-and-confer discussions, Genesh further asserted that the discovery was precluded by the court's July 28 order denying Zachariah's motion for protective order and sanctions. When the parties could not resolve the dispute, Zachariah requested a pre-motion discovery conference. The court took up the dispute at a discovery conference on September 8. After hearing from the parties, the court granted Zachariah leave to file a motion to compel. (ECF 523.)

## II. ANALYSIS

In the present motion, Zachariah moves to compel two categories of documents that Genesh has withheld: "(1) communications with Bean, Adamek's legal counsel, that occurred prior to the date the Affidavit was produced (referred to herein as 'pre-Affidavit communications'); and (2) communications with Bean that occurred after the Affidavit was produced (referred to herein as 'post-Affidavit communications [sic])." (ECF 537, at 2.) Zachariah argues that both categories

of documents are relevant and not privileged, such that Genesh must produce them consistent with Federal Rule of Civil Procedure 26(b).

### A. Relevance

Genesh's first objection to producing documents in response to Zachariah's document request is that the discovery sought is not relevant to the claims or defenses in this case. The party seeking discovery—here Zachariah—bears the initial burden to establish its relevance. *See Sperry v. Corizon Health, Inc.*, No. 18-3119-EFM-ADM, 2020 WL 5642343, at *2 (D. Kan. Sept. 22, 2020); *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360 (D.N.M. 2018); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003). At the discovery stage, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) ("[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case will be deemed relevant."); *Waters v. Union Pacific R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." (internal quotations and citation omitted)). Relevance is often apparent on the face of the discovery request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006).

When the discovery sought appears relevant on its face or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (ruling the party resisting

discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id*. at 670-71.

During the September 8 discovery conference, the court asked Zachariah to explain how the communications she seeks are relevant to a claim or defense in the case, given that the court had already ruled that Genesh's counsel did not commit a HIPPA violation by working with Bean to secure Adamek's affidavit. (ECF 540-1, at 5; ECF 479, at 4-9.) Zachariah asserted that, separately from whether the communications are relevant to the alleged HIPPA violation, they are relevant "to the extent they contain any information about [Zachariah's] treatment, or the witness's opinions, or ability to make opinions, or diagnoses" and "to the treatment that was provided, or diagnosis, or inability to make diagnosis." (ECF 540-1, at 7.) The court then confirmed that Zachariah's position was that the communications are relevant "to the extent that they might include comments, statements, information, et cetera, about [Ademek's] care and treatment." (*Id.* at 8.) Zachariah responded, "Yes . . . that's correct." (*Id.*)

1. Post-Affidavit Communications

Considering the two categories of documents that Zachariah seeks to compel, the court first considers the so-called post-affidavit communications. Zachariah has defined these as the communications between Genesh's counsel and Bean after Genesh provided the affidavit to plaintiffs in March 2026. In other words, after Zachariah raised concerns to both Adamek and Genesh that they had committed a HIPPA violation.

In her motion, Zachariah argues that post-affidavit communications are relevant to the extent they could "demonstrate any potential bias or hostility" that Adamek has against Zachariah based on Zachariah's "accusation against Adamek" regarding the alleged HIPPA violation. (ECF 537, at 5.) However, during the September 8 discovery conference, Zachariah did not discuss this "bias" theory of relevance. Indeed, in response to the court's specific questions, Zachariah asserted that communications about Adamek's treatment and diagnoses were relevant to Zachariah's treatment. Moreover, she specifically disclaimed seeking the communications as relevant to issues raised in her earlier sanctions motion (wherein she argued that Adamek's testimony could be tainted by Zachariah's HIPPA complaint). (*See* ECF 419, at 8.)

Thus, the court finds Zachariah has waived this relevance argument by not raising it during the pre-motion discovery conference. "The court's purpose in conducting pre-motion discovery conferences is to facilitate a discussion of the parties' disputes with the goal of hopefully obviating the need for formal motion practice, or, at a bare minimum, at least narrowing and focusing the issues so as to streamline motion practice. As such, the court expects parties to use the conferences to focus the discussion on their key arguments." *Coe v. Cross-Lines Retirement Center, Inc.*, No. 22-2047-EFM, 2022 WL 17338289, at *2 (D. Kan. Nov. 30, 2022). While *never* mentioning relevance to potential bias during the conference, Zachariah now asserts such potential bias has

her *only* argument as to why post-affidavit communications are relevant. "The court will not consider this belated argument, which [Zachariah] never meaningfully raised during the pre-motion discovery conference process so as to give the court and defendants fair notice that this was likely to be [her] threshold argument." *Id.; see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-CV-9227-JWL-TJJ, 2016 WL 3743102, at *4 (D. Kan. July 13, 2016) (finding a privilege-log challenge waived when it was not raised during discovery conference); *Sullivan v. USD 512 Shawnee Mission*, No. 24-2491-DDC-BGS, 2026 WL 2653855, at *3 (D. Kan. Sept. 9, 2026) (same).

Because Zachariah has not met her burden of demonstrating the relevance of the post-affidavit communications to her treatment and diagnoses (i.e., relevance under the theory set out during the conference), the court upholds Genesh's relevance objection to production of these documents. Zachariah's motion is **denied** to the extent it seeks to compel production of such **post-affidavit communications**.

2. Pre-Affidavit Communications

As noted, Zachariah's discussion at the pre-motion discovery conference largely focused on Bean and defense counsel's pre-affidavit communications, i.e., those communications surrounding an arrangement for Adamek to execute an affidavit in lieu of sitting for the deposition Genesh had noticed. As to these communications, Zachariah has met the low relevance bar. During the discovery conference, Zachariah explained the communications could bear on Adamek's diagnosis (including ability or inability to diagnose) and treatment of Zachariah. As set out in the pretrial order, plaintiffs seek damages for Zachariah's emotional pain and suffering, and Genesh contends that Zachariah had a pre-existing condition that contributed to her emotional distress. (ECF 474, 475.) Zachariah has designated Adamek as a non-retained expert witness

whom she may call at trial to discuss her treatment and the long-term impact of her alleged injuries. (ECF 81, at 1.) Under the liberal relevance standards, the court finds counsel's communications about Adamek's knowledge and potential testimony facially relevant to both Zachariah's theory of liability and damages request.

The burden therefore shifted to Genesh to support its relevance objection. Genesh has not attempted to meet this burden in any meaningful way. Rather, Genesh simply asserts the communications are not relevant to whether defense counsel or Adamek violated HIPPA. Although that assertion may be true, it does not address the more direct connection of the information to the claims and defenses in the case. Thus, Genesh has not carried its burden, and the court overrules its relevance objection as to the pre-affidavit communications. The court thus proceeds to consider whether Genesh's work-product objection fares any better.

**B. Work-Product Protection of Pre-Affidavit Communications**

Genesh's second objection to producing documents in response to Zachariah's document request is that the discovery sought is protected by the work-product doctrine. Genesh has produced a privilege log and, as requested by the court during the September 8 discovery conference, submitted the withheld documents for *in camera* review.

Federal law governs application of the work-product doctrine in federal court. *See Frontier Ref. Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). First recognized in *Hickman v. Taylor*, it is a practical doctrine grounded in the realities of litigation in an adversary system. 329 U.S. 495, 509-11 (1947). The Supreme Court stated that when a lawyer performs his or her various duties, "it is essential that a lawyer work

with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510. The doctrine was subsequently incorporated into Federal Rule of Civil Procedure 26(b)(3). Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

The party asserting work-product protection bears the burden to demonstrate that it applies. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984). The party must show that the materials sought (1) are documents or tangible things; (2) were prepared in anticipation of litigation or for trial; and (3) were prepared by or for a party or a representative of that party (such as the party's attorney). FED. R. CIV. P. 26(b)(3); 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2024 (3d ed. 2019).

1. The Pre-Affidavit Communications are Work-Product

Genesh's privilege log and brief establish that the pre-affidavit communications are the protected work product of Genesh's attorney. First, the privilege log entries are all for documents—draft affidavits and communications about those draft affidavits. Second, they were all created while litigation was underway, and the record shows that they concern this litigation. Third, the documents were created by or for Genesh's counsel, who is a party representative. Applying the above standards, the court finds the pre-affidavit communications to be protected. *See Pipeline Prods., Inc. v. Madison Companies, LLC*, No. 15-4890-KHV-ADM, 2019 WL 3973955, at *5 (D. Kan. Aug. 22, 2019) (*Pipeline II*) (defining "draft non-party affidavits and communications with counsel relating to those draft affidavits" as "classic work product"); *Booth v. Galveston Cnty.,* No.

3:18-cv-00104, 2018 WL 5276265, at *3-4 (S.D. Tex. Oct. 10, 2018) (finding "it is unsurprising that the overwhelming majority of courts recognize that draft declarations, the evolution of those declarations, and communications between witnesses are protected by the work-product doctrine") (collecting cases); *Live Nation Worldwide, Inc. v. Cohl*, No. 10-24144-CIV, 2011 WL 5597348, at *2 (S.D. Fla. Nov. 17, 2011) (holding draft declarations exchanged between counsel and non-party declarant protected) (collecting cases).

Zachariah briefly suggests that the work-product doctrine cannot apply to the pre-affidavit communications because Adamek is not Genesh's identified "witness" or "agent." (ECF 537, at 2.) Zachariah cites no authority holding that work-product protection only applies to counsel's discussions with third-parties who are so aligned with counsel's client. The court's independent review of caselaw does not persuade it to recognize such a limitation. *See, e.g., Live Nation*, 2011 WL 5597348, at *4 (rejecting argument that third-party witness must share a common interest with counsel's client for draft affidavit to be protected); *1100 W., LLC v. Red Spot Paint & Varnish Co.*, No. 1:05CV1670LJMWTL, 2007 WL 2904073, at *2 (S.D. Ind. May 18, 2007) (finding work-product protection for affidavits drafted by plaintiff's counsel's investigator for non-party who had previously done work for defendant); *Gomez v. Epic Landscape Prods., L.C.*, No. 22-2198-JAR-ADM, 2023 WL 4560898, at *2 (D. Kan. July 17, 2023) (finding work-product protection for declarations defense counsel prepared for non-parties who were potential fact witnesses).

Zachariah also asserts that the work-product doctrine does not protect the communications because it "does not protect facts concerning the creation of work product or facts contained within work product." (ECF 537, at 2 (quoting *Martley v. City of Basehor*, No. 19-2138-DDC-GEB, 2021 WL 4134307, at *5 (D. Kan. Sept. 10, 2021).) Although Zachariah adequately states the law, her application is misguided. First, the work-product doctrine can protect materials generated

by attorneys that contain facts—so called "fact work product." *See Gomez,* 2023 WL 4560898, at *2 (quoting *Oklahoma v. Tyson Foods, Inc*., 262 F.R.D. 617, 626 (N.D. Okla. 2009)). Second, although the doctrine does not protect from discovery the underlying facts contained in work product, this recognized rule does not entitle Zachariah to view the protected materials themselves. *See Id.* at *3 (quoting *High Tech Commc'ns, Inc. v. Panasonic Co.*, No. CIV. A. 94-1477, 1995 WL 83614, at *4 (E.D. La. Feb. 24, 1995) ("[A] document does not lose its work product status merely because it contains discoverable factual information.")). As the court explained in *Gomez*, "[t]o hold otherwise would unfairly permit a party to piggyback onto the work done by the other party in marshalling the facts." *Id.* (citing *Hickman*, 329 U.S. at 516 (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.")). Instead, Zachariah had an opportunity to conduct her own discovery to learn the relevant facts. *See, e.g.*, *NLRB v. Building & Constr. Trades Council*, No. 88-03495, 1989 WL 2627, at *3 (3d Cir. July 17, 1989) ("The identity of the witnesses is known, and therefore, the information sought can be developed through the normal, though time consuming, processes of deposition."); *High Tech Commc'ns*, 1995 WL 83614, at *4 ("Panasonic can discover any facts disclosed in the questionnaires by deposing the individuals who responded to them."); *Tyson Foods,* 262 F.R.D. at 629 ("Thus, although a party is protected from producing work product documents through requests for production, the facts contained in that work product can be discovered through the use of interrogatories."); *Coe*, 2022 WL 17338289, at *10 (same); *Gomez,* 2023 WL 4560898, at *3 (same). The court so informed Zachariah in its July 28 order. (ECF 479, at 11 ("If Zachariah truly wished to explore the statements in Kirby-Adamek's affidavit, she could have sought the other parties' consent to allow the deposition.").)

Finally, the court notes that although Rule 26(b)(3)(A) directs that fact work product may be discoverable in limited situations—where a party shows "substantial need" or the inability to obtain the information through other means without "substantial hardship"—Zachariah does not attempt to demonstrate such need or hardship.

Based on the above, the court finds the pre-affidavit communications are work-product under Rule 26(b)(3). The court must now consider whether Genesh waived work-product protection, as Zachariah argues.

2. <u>Genesh Did Not Waive Work-Product Protection By Sharing Documents with Bean</u>

Zachariah next argues that Genesh's counsel waived work-product protection over the documents by providing the documents to Bean, Adamek's counsel. Zachariah bears the burden to establish that a waiver of work-product protection occurred. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 & n.10 (5th Cir. 2010); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 2555834, at *3 n.28 (D. Kan. June 13, 2017). "While voluntary disclosure waives the attorney-client privilege, it does not necessarily waive work-product protection." *Pipeline Prods., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV, 2019 WL 2106111, at *3 (D. Kan. May 14, 2019) (*Pipeline I)* (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010)). "Rather, the court generally considers whether the voluntarily disclosure was to an adversary or a conduit to an adversary." *Id.* (cleaned up). The rationale for this waiver rule is simple: "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). So "[i]n the context of work product, the question is not, as in the case of attorney-client privilege, *whether* confidential communications are disclosed, but to *whom* the disclosure is made—because the protection is designed to protect

an attorney's mental processes from discovery by *adverse* parties." *Pipeline II*, 2019 WL 3973955, at *5 (emphasis in original) (quoting *SEC v. Herrera*, No. 17-20301, 324 F.R.D. 258, 262 (S.D. Fl. 2017)).

Zachariah asserts Genesh waived work-product protection "by directly communicating with Adamek's counsel and providing her documents – a witness to which it is not aligned." (ECF 537, at 3.) But "non-alignment" is not a factor in the test for waiver of work product. As set out above, the test is whether disclosure is to an adversary or a conduit to an adversary. Because the purpose of the work-product doctrine is to protect counsel's mental processes from his litigation adversary, "[m]ost courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). *See also Coma ex rel Coma v. United States,* No. 4:19-cv-00286, 2022 WL 3220389, at *4 (M.D. Pa. Aug. 9, 2022) (holding plaintiff's counsel's disclosure to non-party who violently attacked client did not waive work-product because "the existence of a shared common interest is simply irrelevant; what matters is whether [the non-party] and [client] are litigation adversaries"). Even accepting Zachariah's assertion that Genesh and Adamek are not "aligned," the matter is a non sequitur with no impact on the waiver analysis.

Zachariah has not shown that Bean and/or Adamek are Genesh's litigation adversaries. Nor has Zachariah suggested they are conduits to Zachariah, likely to disclose the work product to Zachariah. Thus, Zachariah has not demonstrated waiver of work-product protection by Genesh's counsel's disclosure of the documents to Bean.[2]

---

[2] Though unclear, Zachariah seems to argue Genesh has waived work-product protection over an earlier draft of a letter that Bean ultimately sent to Zachariah's counsel in April 2026.

3. Gensh Did Not Waive Work-Product Protection by Using the Affidavit (No Subject-Matter Waiver)

Zachariah's final argument is that, pursuant to Federal Rule of Evidence 502, Genesh waived work-product protection as to the same subject matter as the information in Adamek's affidavit once it produced that affidavit and relied on it in this action. Under Rule 502(a), waiver generally applies only to the information disclosed and not to the broader subject matter of the information. *See* FED. R. EVID. 502(a) Advisory Committee Note (Revised November 28, 2007). Subject-matter waiver is limited to situations in which intentionally disclosed communication or information "ought in fairness . . . be considered together" with undisclosed communication or information concerning the same subject matter. FED. R. EVID. 502(a). "[S]ubject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence." FED. R. EVID. 502(a) Advisory Committee Note (Revised November 28, 2007).

Zachariah has not suggested how Genesh is using information disclosed in Adamek's affidavit "in a selective, misleading, and unfair manner" to present evidence in this action. *Id.* To the extent Genesh attached the affidavit as an exhibit to its response in opposition to Zachariah's Motion for a Protective Order, For Sanctions & Disqualification of Defendant's Counsel based on an alleged HIPPA violation (ECF 419), the court decided the issues in that motion on July 28. (ECF 479.) Unless and until the district judge overturns that decision based on Zachariah's pending motion for review, the earlier drafts of the affidavit are not relevant to that issue. Similarly, if in the future Genesh relies on the affidavit for some purpose, Zachariah can attempt

(ECF 537, at 3 (citing 438-2).) The court generally agrees that such disclosure to an adversary waives work-product protection over the disclosed document, but the court has upheld Genesh's relevance objection to producing the draft letter, so need not decide the waiver question.

to show that the use presents a misleading picture of the evidence. But at this time, Zachariah has not indicated that Genesh is relying on the information set out in the affidavit to support an argument currently pending before the court.

To be sure, the filing of an affidavit in a case is not alone enough to deem earlier drafts of the affidavit waived. As noted above, this court and other courts find draft affidavits to be "classic work product" that is protected. *See, e.g. Pipeline II*, 2019 WL 3973955, at *5. Such drafts must be disclosed only in limited situations where fairness so dictates. *See, e.g., Huguely v. Clarke*, No. 7:20cv30021, 2021 WL 537238, at *3 n.1 (W.D. Va., Feb. 15, 2021) ("The court also finds that Huguely has not waived work-product protection for the earlier declaration by submitting and relying upon a final version in the habeas proceedings."); *Grano v. Sodexo Mgmt., Inc.*, No. 18CV1818-TWR(BLM), 2021 WL 4751181, at *7 (S.D. Cal. Oct. 12, 2021) ("[T]he fact that Plaintiffs filed the declarations in support of various pleadings does not automatically waive the attorney work product protection for the drafts and correspondence leading up to the final declaration."); *In re Intuitive Surgical Securities Litig.,* 2017 WL 5054404, at *3 (N.D. Cal., Apr. 10, 2017) (rejecting argument that the filing of declarations effected subject-matter waiver because the "determination whether there has been any waiver is rooted in principles of fairness"); *Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) (holding that affidavits "which have not been adopted or executed by the non-party witness, do not lose their character as work product because a final executed version has been affirmatively used in the litigation"); *Randleman v. Fid. Nat. Title Ins. Co.,* 251 F.R.D. 281, 286 (N.D. Ohio 2008) (ruling that the filing of final affidavits "did not waive the work product doctrine's protection of earlier material"); *E.E.O.C. v. Johnson & Higgins, Inc.,* No. 93 CIV. 5481 (LBS), 1998 WL 778369, at *10 (S.D.N.Y. Nov. 6, 1998) (partial disclosure of one draft of

affidavit did not waive work product as to other draft because plaintiff was “not seeking to use [the] draft repudiating affidavit as a ‘sword and shield’”).

Zachariah has not demonstrated that Genesh is using Adamek’s affidavit to present a misleading picture of the evidence, such that fairness dictates a finding of subject-matter waiver. Thus, the court continues to find the pre-affidavit communications protected by the work-product doctrine. Zachariah’s motion is **denied** to the extent it seeks to compel production of such **pre-affidavit communications**.

**IT IS THEREFORE ORDERED** that Zachariah’s motion to compel production of documents (ECF 537) is denied.

Dated November 17, 2026, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge